*In re* DAVID EDMONDS, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* RUTH BELLE EDMONDS, Respondent-Appellant.)

Third District No. 79-882

Opinion filed June 18, 1980.

Tony L. Brasel, of Bell, Razzano & Blunk, of Watseka, for appellant.

James R. Fritzie, State's Attorney, of Watseka (Gail C. Coil, Assistant State's Attorney, of counsel), for appellee.

J. Dennis Marek, Public Defender, of Watseka (Susan Sumner Tungate, Assistant Public Defender, of counsel), guardian ad litem.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
The respondent below, Ruth Belle Edmonds, appeals from a judgment of the Circuit Court of Iroquois County, finding her an unfit parent and

appointing a guardian to consent to the adoption of her seven-year-old son, David.

David Edmonds was born in August of 1972. The child's mother, Ruth Edmonds, is unwed. She has a sixth grade education, having dropped out of school for failure to keep up. When tested on August 26, 1975, she was diagnosed as exhibiting "mild mental retardation." "Part of this retardation is probably due to socio-cultural deprivation during much of her life."

On January 16, 1975, after a hearing, the court found the minor, David Edmonds, to have been neglected, in that his environment was injurious to his welfare (Ill. Rev. Stat. 1975, ch. 37, par. 702—4(1)(b)). He was also found dependent, in that he was without proper care because of the mental disability of his parent (Ill. Rev. Stat. 1975, ch. 37, par. 702—5(1)(b)). Accordingly, the minor was adjudicated a ward of the court, and Richard S. Laymon, Guardianship Administrator of the Department of Children and Family Services, was appointed his temporary guardian and custodian.

Testing of the child was then conducted and he was found to be considerably underdeveloped in his speech and motor abilities. The testers thought this was due to environmental deprivation. On April 29, 1975, the court found that it was in the best interests of the minor that he be placed with the Department of Children and Family Services, and accordingly, Richard S. Laymon (or his successor(s) in office) was appointed guardian and custodian of the minor, with directions from the court to implement programs for returning the minor to the home of his mother and directing the Department to permit and provide reasonable opportunity for visitation between the mother and minor during the period of the Department's custodianship.

On December 8, 1978, the State petitioned the court to modify the previous order and grant "appropriate relief under the Juvenile Court Act, including the appointment of a guardian with the power to consent to adoption under Section 5—9 of the Juvenile Court Act" (Ill. Rev. Stat. 1977, ch. 37, par. 705—9(2)), because the "parents of the minor have failed to make reasonable efforts to correct the conditions which were the basis of the removal of the child from his parents or to make reasonable progress toward the return of the child to his parents within 12 months after an adjudication of 'neglected' minor status under Section 2—4 of Chapter 37, Illinois Revised Statutes, and adjudication of 'dependent' minor status under Section 2—5 of Chapter 37, Illinois Revised Statutes, as defined by Section 1501(D)(m) of Chapter 40 of Illinois Revised Statutes."

On September 9, 1979, at the hearing on the petition, the court found that the allegations of the petition had been proved, and, pursuant to section 5—9 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 705—9(2)), found that it was in the best interests of the minor that Richard S. Laymon or his successor(s) in office be authorized to consent to the child's adoption. The

court found both of David Edmonds' parents to be unfit persons as defined in the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1501), "the mother having failed to make reasonable progress toward the return of the minor to her within 12 months after the minor was adjudicated a neglected minor under the Juvenile Court Act and the father being unfit by reason of his failing, for a period of 12 months, to maintain reasonable contact with the child or to plan for the child's future, while the child was in the care of the Department of Children and Family Services of the State of Illinois." Accordingly, the Guardianship Administrator of the Department of Children and Family Services was empowered to consent to the adoption of David Edmonds. Post-judgment relief was denied, and the mother of the child now appeals.

When the child was first brought to the attention of the Department of Children and Family Services, he was residing, along with his mother, in the home of his grandparents, Harrison (who was an invalid) and Arvilla Edmonds. Mrs. Edmonds exerted a good deal of influence over Ruth. The house was found to be very cluttered with debris, with only narrow pathways through it for movement. The child, David, was largely confined to his bed and playpen. He would be fed while lying on his back, to avoid "making a mess," with the result that he would choke on his food. At 32 months of age, the child was unable to talk and had poor motor abilities. After David was placed in the custody of the Department of Children and Family Services, a program was devised whereby the mother would be taught homemaking and child care skills, with the goal of having the child returned to her. Ruth Edmonds moved into a trailer in Gibson City. She was enrolled in a residential training program, but, after talking things over with her mother, she refused to attend. She was then enrolled in a day program which she attended for nine months, but from which she then dropped out.

A homemaker was sent to her trailer to assist her in her training. Ruth learned to cook, but was unable to use the oven of her gas stove. There is evidence that she let food spoil, but ate it anyway and tried to feed it to David, and that she hid food in various parts of the trailer, but continued to eat it even after it was partially consumed by mice. The trailer was otherwise kept clean. In the winters of 1977 and 1978, Ruth was unable to keep the trailer adequately heated, and returned to her parents' home. Ruth, at the insistence of her mother, refused to leave the trailer at night. She was unable to cross the two-lane highway along which the trailer was located. She was unable to learn to use checks or balance her budget, although she did return all the money she had borrowed from a social agency. She became disoriented in the grocery store and was unable to shop without assistance. She was unable to take David shopping, because she lacked the motor ability to do her shopping and keep David under control at the same time. She lacked the physical coordination to play with David at his own level, once the child was a few years old. During visits with her son, she would grab the

boy, hold him close to her, rock back and forth, and weep. This frightened the child. In June of 1978, she refused to relinquish the child to the Department, and the sheriff was called to physically remove David from her home. After that, she was not allowed to visit with David. During June of 1978, David was placed in the home of Marshall and Karen Bourne. Mrs. Bourne is a special education teacher. She was confident that, with proper stimulation, the boy would progress, and her prognosis was, apparently, correct. At the time of the fitness hearing, the child was seven years old. He had successfully completed kindergarten and was enrolled in the first grade of public school. He had, by that time, overcome a good deal of the developmental retardation he had exhibited when first removed from his mother's home, at the age of two.

■■■ Before a guardian may be appointed with power to consent to the adoption of a minor, the parents must either consent to the termination of their parental rights or must be found, by clear and convincing evidence, to be unfit. (Ill. Rev. Stat. 1977, ch. 37, par. 705—9(2); *In re Bennett* (1980), 80 Ill. App. 3d 207, 210, 399 N.E.2d 735; *In re Austin* (1978), 61 Ill. App. 3d 344, 346, 378 N.E.2d 538; *In re Massey* (1976), 35 Ill. App. 3d 518, 521, 341 N.E.2d 405.) A petition to have the parents declared unfit must set forth with particularity the grounds for such a determination. (*In re Austin* (1978), 61 Ill. App. 3d 344, 346, 378 N.E.2d 538.) The father of David Edmonds was notified by publication and did not appear. He is not a party to this appeal. The petition alleges that the mother should be declared unfit under section 1(D)(m) of the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1501(D)(m)), which reads:

> "D. 'Unfit person' means any person whom the court shall find to be unfit to have a child sought to be adopted, the grounds of such unfitness being any one of the following:
>
> * * *
>
> (m) Failure to make reasonable efforts to correct the conditions which were the basis for the removal of the child from his parents or to make reasonable progress toward the return of the child to his parents within 12 months after an adjudication of neglected minor under Section 2—4 or dependent minor under Section 2—5 of the Juvenile Court Act [Ill. Rev. Stat. 1977, ch. 37, pars. 702—4 or 702—5]."

The appellant calls our attention to evidence in the record supportive of the proposition that the appellant made a subjectively reasonable effort, given her mental handicap, to correct the conditions which were the basis for the removal of the child and that this alone requires reversal. The evidence on this point is in dispute. We need not reach this issue, however, as the trial court found parental unfitness on the ground that the mother failed to make reasonable progress toward the return of the minor to her within 12 months after the minor was adjudged a neglected minor under the Juvenile Court Act. Such a finding alone is sufficient to support a judgment of parental

unfitness. The language of subsection 1(D)(m) of the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1501(D)(m)) indicates that the two standards therein are disjunctive, making a failure to make either reasonable efforts or reasonable progress a ground for an adjudication of unfitness. *In re Bennett* (1980), 80 Ill. App. 3d 207, 210, 399 N.E.2d 735; *In re Austin* (1978), 61 Ill. App. 3d 344, 349, 378 N.E.2d 538.

It is argued by appellant that the progress which she made was reasonable for a person of her limited mental ability. In response, we note that:

> "[T]he term 'reasonable progress' requires at a minimum measurable or demonstrable movement toward the goal of return of the child. Whether a small amount of progress is 'reasonable' must be determined with proper regard for the best interests of the child. Such an inquiry might well involve consideration of the limitations of the parents, but also would necessarily require consideration of the possibility that the child might be forced to indefinitely reside with a succession of impermanent foster parents. Reasonableness may also depend on the situation which led to removal of the children, since slight progress in correcting a situation which was relatively mild could be viewed as more satisfactory than the same degree of progress in correcting a situation that greatly endangered a child.
>
> ❋ ❋ ❋
>
> Subsection (m) provides that a person may be declared an unfit parent for failure to make 'reasonable efforts' or 'reasonable progress' within 12 months of removal of the children. This time period is a reduction of the former time period of 24 months (see P.A. 80-558, eff. Oct. 1, 1977), and clearly manifests the intention of the legislature that determinations of unfitness under this subsection be made as soon as possible so that children will not be left for an unnecessarily long time in an impermanent home. Accordingly, it would be error to either delay such a determination so that further time could pass or rule that failure to make reasonable progress had not been shown because no evidence had been presented showing that there would be none at some future time." (*In re Austin* (1978), 61 Ill. App. 3d 344, 350, 378 N.E.2d 538.)

Almost four years had passed between the adjudication of the minor as neglected and dependent and the filing of the petition to terminate parental rights. While Miss Edmonds may have made some slight progress in her ability to care for herself, the weight of the evidence is not contrary to a finding that she failed to make reasonable progress toward the safe return of her child to her care.

In the recent case of *In re Devine* (1980), 81 Ill. App. 3d 314, 401 N.E.2d 616, the appellant parents argued that mentally retarded parents cannot be

234

found unfit where the grounds of unfitness are themselves caused by the mental retardation of the parents. This position was advanced for the reason that a retarded parent is not responsible for his inability to care for his child and is therefor not at fault. The court pointed out that:

"In the grounds of unfitness set forth in subsection D of section 1 of the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1501D) nowhere appear such words as 'wilful,' 'intentional,' 'knowingly,' 'negligently' or any other word relating to the state of mind or will of the unfit person. * * * Thus a parent can be unfit without fault. Such a conclusion is necessary if it is to accord with the legislative intent of an act manifestly concerned with the best interests of the child. Section 20a of the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1525) expressly instructs that 'the best interests and the welfare of the person to be adopted shall be of paramount consideration in the construction and interpretation of this Act.' We abide by that instruction. A child is no less exposed to danger, no less dirty or hungry because his parent is unable rather than unwilling to give him care." *In re Devine* (1980), 81 Ill. App. 3d 314, 319-20, 401 N.E.2d 616.

The evidence in the instant case clearly supports the conclusion that under the care of his mother, the child David was developmentally retarded. Under foster care, he was able to overcome, to a considerable extent, the handicap visited upon him by the deprived environment in which he had lived. The evidence is clear, and the trial court so noted, that Ruth Edmonds loves her son and wants him returned to her. However, the evidence also clearly supports a finding that she has failed, since the child was adjudged neglected and dependent, to make measurable progress toward his safe return.

The court is in the best position to judge the demeanor and the credibility of the witnesses, and this is a vital factor in evaluating the correctness of the court's determination, which should not be disturbed unless it is against the manifest weight of the evidence. (*In re Saadoon* (1979), 78 Ill. App. 3d 319, 323, 397 N.E.2d 178.) Considering all the evidence, we conclude that the judgment order appealed from, finding the unfitness of respondent under the pertinent statute, is predicated upon clear and convincing proof. The result reached by the trial court is in accordance with the manifest weight of the evidence.

We, therefore, affirm the judgment of the Circuit Court of Iroquois County.

Affirmed.

STOUDER and BARRY, JJ., concur.