*In re* W.U. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Carolyn Johnson, Respondent-Appellant).

Fourth District   No. 4—89—0775

Opinion filed June 29, 1990.

Lynn R. Feldman, of Kirtley-Pavia-Marsh, P.C., of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Thomas A. Bruno, of Urbana, guardian *ad litem*.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Carolyn Johnson, respondent, appeals the trial court order terminating parental rights for her son, L.K. Paternal rights were also terminated for L.K.'s father, Willie Keyhea. Keyhea does not join respondent in this appeal. We affirm.

On March 5, 1984, the Champaign County State's Attorney filed a petition against respondent alleging neglect and abuse of her 14-year-old son, T.J., her 12-year-old son, W.U., her six-year-old son, W.K., and her five-year-old son, L.K. The petition alleged the minors were neglected as respondent does not provide the proper and necessary support for the minors, as she last left T.J. and W.U. in the care of an uncle from June 1983 through the present, without making any formal arrangement and without providing any support to the uncle; the minors are neglected as respondent does not provide necessary support for the minors, as she left W.K. and L.K. with an individual named Jesse on or about February 28, 1988, and by March 2, 1988, still had not made contact with this individual or done anything about picking the children up; the minors are neglected as respondent does not provide the minors the education required by law, as W.K. and L.K. have missed 31 days of school during this school year; the minors are neglected as respondent does not provide the care necessary for the minors' well-being, in that the school social workers for W.K. and L.K. made arrangements to get shoes for the children but needed a permission slip signed by respondent, and respondent never returned the permission slip; the minors are abused by reason of being minors under the age of 18 whose environment is injurious to their welfare when they reside with respondent. At the shelter-care hearing, the trial court found the petition to be supported by probable cause and temporary custody of the children was given to Illinois Department of Children and Family Services (DCFS).

An adjudicatory hearing was held on March 27, 1984, and the children were found to be neglected. The court found for the petitioner on the allegations the minors were neglected due to respondent having left T.J. and W.U. in the care of an uncle and due to the

school absenteeism of W.K. and L.K. A dispositional hearing was held on May 2, 1984. The court adjudged the minors neglected and respondent unable, unfit, and unwilling to care for them. The court appointed DCFS guardian of the minors with power to place and made rehabilitative orders against respondent.

A series of review hearings followed on October 25, 1984, January 24, 1985, May 2, 1988, September 6, 1988, October 4, 1988, April 4, 1989, and May 30, 1989. Additionally, DCFS provided the court with periodic reports of respondent's progress. On June 5, 1989, a petition for termination of respondent's parental rights for W.U., W.K., and L.K. was filed. The petition alleged respondent was an unfit parent for failure to make reasonable efforts to correct the conditions which were the basis for removal of the children, for failure to make reasonable progress toward return of the children within 12 months after adjudication, and for failure to demonstrate a reasonable degree of interest, concern, and responsibility as to the welfare of the children. T.J. was not included in the petition because of his eligibility for independent living.

A hearing was held on the petition to terminate parental rights on July 24, 1989. The court found respondent unfit based upon her failure to make reasonable efforts, her failure to correct conditions, and her failure to demonstrate a reasonable degree of interest. The court terminated respondent's parental rights as to L.K. and gave DCFS the power to consent to adoption. The court found it was not in the best interests of W.U. and W.K. to terminate respondent's parental rights. Respondent appeals, alleging the trial court erred in finding her unfit and in terminating her parental rights with respect to L.K.

■ ■ Termination of parental rights is governed by the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1989, ch. 37, par. 801—1 *et seq.*) and the Adoption Act (Ill. Rev. Stat. 1989, ch. 40, par. 1501 *et seq.*). Under these acts, a finding of unfitness may lead to termination of parental rights. The court may take such action after finding it to be in the best interests of the minor. (Ill. Rev. Stat. 1989, ch. 37, par. 802—29(2).) A finding of unfitness can result from failure by the parent to make reasonable efforts to correct conditions which were the basis for the removal of the child, or from failure to make reasonable progress toward the return of the child within 12 months after adjudication, or from failure to maintain a reasonable degree of interest, concern, and responsibility as to the child's welfare. (Ill. Rev. Stat. 1989, ch. 40, pars. 1501(D)(m), (D)(b).) Reasonable progress requires measurable movement toward the goal of returning the child.

Whether a small amount of progress is reasonable must be determined with proper regard for the best interests of the child. *In re Edmonds* (1980), 85 Ill. App. 3d 229, 406 N.E.2d 231.

At the termination hearing, Vernessa Gipson testified for the State. Gipson was the child-welfare specialist assigned to this case at its inception. In this capacity, she assisted in formulating a service plan for respondent designed to improve respondent's parenting ability. The plan provided respondent was to obtain adequate and suitable housing for herself and her four children, to attend parenting classes through Children's Home and Aid Society of Illinois, seek employment in order to financially support herself and her children, and refrain from abusing any type of alcohol or drug substance. This plan was formulated in response to the conditions which had precipitated removing the children from respondent. DCFS evaluated respondent's progress every six months at an adminstrative case review. Documents from these reviews were admitted into evidence at the termination hearing.

Respondent's first administrative review was held on September 14, 1984. At this time, respondent had not made any progress toward establishing a permanent place of residence for herself or her children. Respondent had not kept any appointments with DCFS, nor had she attended parenting classes. Respondent had called Gipson on August 27, 1984, and stated she had a $300-a-day heroin habit and wanted help. Respondent did not attend an appointment at Prairie Center which was made to assist her with her drug problem. At this time, there were also two outstanding warrants issued for respondent for the offenses of burglary and forgery.

Respondent was next evaluated on March 8, 1985. At this time, respondent had been sentenced to four years' imprisonment at the Dwight Correctional Center. Her children had been moved from their original foster-care placements and were living with respondent's sister and brother-in-law, Ann and Robert Johnson.

The evaluation of September 27, 1985, indicated respondent had been released from the penitentiary and was in a work-release program in Chicago, Illinois, which required she reside at the Salvation Army residential facility. Respondent was employed while in the program and had made one visit to Champaign. While respondent was in the work-release program, she did meet several of the goals of her service plan. As reported in the adminstrative review of March 21, 1986, and September 26, 1986, respondent was employed at Church's Fried Chicken and had remained drug free. She was participating in counseling and had visited with her children on a monthly basis in Champaign.

Respondent was released from the work program in October 1986 and her progress toward meeting her goals immediately diminished. Upon her release, she stayed briefly in Champaign, had very little contact with her sons and no contact at all with DCFS. In December 1986, respondent requested her parole be transferred to Chicago, as she was moving back there to live with a man.

Respondent did contact DCFS in January 1987, to set up an appointment at a time when she expected to be in town; however, respondent did not keep the appointment. According to respondent's sister, Ann Johnson, respondent was in town that weekend. On March 16, 1987, respondent contacted DCFS and stated she planned on returning to Champaign after her marriage to John Behea in April 1987. There had been little contact between respondent and her sons. Respondent had not demonstrated any interest in the boys' education and had not attended any teacher's conferences as requested. At this time, W.K. was having trouble at school as he had been caught lying and stealing. He continued to work below his grade level and was being provided additional assistance with speech and language services in a learning disabilities class. L.K. also continued to function below his grade level and received extra help in a learning disabilities class.

The record from the adminstrative review held September 23, 1987, stated respondent had not kept in contact with her sons, had not visited with them since before March 1987, and had not written to them. Respondent continued to reside in the Chicago area, where she worked two days a week for the Chicago Housing Authority. She was maintaining a relationship with John Behea, but now did not plan on marrying him. The March 4, 1988, adminstrative review indicated respondent had visited with her sons in September, October, November 1987, and January and February 1988. Respondent had been released from parole in October 1987; however, she had not returned to Champaign or taken a role in her sons' schooling.

As of September 23, 1988, respondent had secured employment at Jewel Foods in Champaign. Respondent had not yet secured housing and it was not always known whether she was living in Champaign or Chicago, or where she could be reached at either location. Respondent, for the most part, kept in contact with her sons, but again had not attended any school conferences.

The record from the adminstrative review of March 23, 1989, indicated respondent still had not secured housing. Respondent was no longer employed, allegedly due to a hand injury, but refused to sign release forms so her injury could be confirmed. Respondent saw her

sons at least twice monthly, but was not available for the weekly visits on a consistent basis. The service plan established in September 1988 indicated respondent should visit with the children twice a week for at least two hours and one weekend day. Respondent had not attended any school conferences, but had attended a sporting event. W.K. had been classified as learning disabled and was two to three grades behind in all subjects. L.K. continued to be below grade level in achievement and had difficulty reading.

As of September 20, 1989, respondent was again incarcerated at the Dwight Correctional Center, apparently for the offense of theft. As part of her sentencing agreement, she had entered into a drug and alcohol program. Respondent attributed her reinvolvement in drugs to her inability to gain employment and housing. Respondent is pregnant and hopes to be a "real mother" to the baby, which is due in February.

The documents received by the court from the administrative reviews were substantiated by a succession of child-welfare specialists who had been assigned to the case during its five-year pendency. All testified respondent had lacked the stability required to regain custody of the children.

■ On appeal, a court will not reverse a finding of unfitness unless it is against the manifest weight of the evidence. The trial court's opportunity to view and evaluate the parties and their testimony is far superior to that of a reviewing court. Accordingly, the trial court's finding should be given great deference. *In re Brown* (1981), 86 Ill. 2d 147, 427 N.E.2d 84; *In re Wright* (1986), 142 Ill. App. 3d 809, 492 N.E.2d 252.

Respondent was given both time and opportunity to make a reasonable progress, reasonable efforts, and to demonstrate an interest in her children. Respondent failed and the trial court was required to act. The evidence showed at the time respondent's children were taken from her custody, respondent did not have a permanent place to live and would frequently leave her children with friends or relatives for extended periods of time without letting anyone know where she was or when she would be back. Her two youngest children, W.K. and L.K., had missed a great deal of school even after respondent had been told how important it was for them to attend regularly.

Five years later, respondent still does not have a permanent place to live and continues to disappear and avoid contact with DCFS and her family. During this five-year period, respondent has lived a nomadic existence, moving back and forth between Cham-

paign and Chicago, often without informing anyone of her whereabouts. At no time did respondent have a home of her own at which she could have taken custody of the children. Respondent's contacts and visits with the children remained sporadic, with extended periods in which there was no contact whatsoever.

Respondent's assertion there has been reasonable progress because W.K. and L.K. were now attending school regularly is without merit. This progress has not been due to any efforts or action on the part of respondent. Respondent has not made any attempts to understand or participate in the educational needs of W.K. and L.K., even though informed of their educational problems. Respondent has not attended any school conferences, even when specifically advised of the meetings and told of the importance of attending. Respondent has consistently shown a blatant lack of concern toward her children's education during the entire five-year period.

■ The trial court did not abuse its discretion in terminating respondent's parental rights for L.K. Such a decision was supported by clear and convincing evidence termination was in the best interests of L.K. At the time of termination, L.K. was an 11-year-old boy who had been in temporary custody since the age of six. The Johnsons, with whom L.K. had been living for the last five years, were interested in adopting him; moreover, there appeared to be other adoptive options. From all the evidence, it is not likely respondent's parenting ability will improve in the near future, and L.K. has already had to wait too long for a permanent home. Clearly, the best interests of L.K. dictate termination of respondent's parental rights.

The fact the trial court found it not to be in the best interests of W.U. and W.K. to terminate parental rights does not affect our decision regarding L.K. At the time of the termination hearing, W.U. was a 17-year-old high school junior with plans to attend college. W.U. was entering the independent living program and requested parental rights not be terminated. W.K. was 12 years old at the time of the termination hearing. He was no longer living with the Johnsons and had been placed in foster care. Though DCFS recognized W.K.'s need for permanent placement, it stated W.K. could probably not be successfully adopted citing his race, age, learning disabilities, behavioral problems, and involvement with the law. It was the recommendation of DCFS that parental rights for W.K. not be terminated for fear he would become "lost in the system." The trial court agreed.

Ironically, W.K. has already been "lost in the system." We question the rationale and wisdom of waiting five years to file a petition for termination. (See *In re A.T.* (1990), 197 Ill. App. 3d 821 (Steig-

mann, J., specially concurring).) Though respondent has seen fit to squander her life and play the role of a visiting mother when convenient, she should have not been permitted to inflict such a punishment upon W.K. W.K. deserved, and still does deserve, better.

Affirmed.

LUND and SPITZ, JJ., concur.