581 N.E.2d 1202 (1991)
221 Ill. App.3d 373
163 Ill.Dec. 779
In the Interest of C.R., J.R. and M.R., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Gayle Richardson, Respondent-Appellant). In the Interest of C.R., J.R., and M.R., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Oland Ray Belcher, Respondent-Appellant).
Nos. 4-91-0075, 4-91-0113.
Appellate Court of Illinois, Fourth District.
November 14, 1991.
*1203 Lynne R. Feldman, Pavia & Marsh, Urbana, for Gayle Richardson.
Thomas J. Difanis, State's Atty., Urbana, Kenneth R. Boyle, Director, State's Attys. Appellate Prosecutor, Springfield, Robert J. Biderman, Deputy Director, Elliott Turpin, Staff Atty., for the People.
Michael B. McClellan, Dodd & McClellan, P.C., Champaign, for Oland Ray Belcher.
Justice McCULLOUGH delivered the opinion of the court:
On January 8, 1991, the parental rights of respondents Gayle Richardson (Gayle) and Oland Ray Belcher (Ray) to three female respondent minors, C.R. (born July 29, 1979), J.R. (born August 7, 1983) and M.R. (born March 28, 1986), were terminated. Ray is the natural father to J.R. and M.R. only. In No. 4-91-0075, respondent Gayle appeals, contending (1) the petition to terminate her parental rights does not state a cause of action because the trial court did not enter a written order adjudicating the minors neglected, (2) the finding of unfitness pursuant to section 1(D) of the Adoption Act (Act) (Ill.Rev.Stat.1989, ch. 40, par. 1501(D)) was against the manifest weight of the evidence, and (3) the termination of her parental rights as to J.R. was not in the best interests of J.R. In No. 4-91-0113, respondent Ray appeals, contending the termination of his parental rights to the three minors was against the manifest weight of the evidence and not in the best *1204 interests of the children. We disagree with both respondents and affirm the trial court.
On July 19, 1988, the Department of Children and Family Services (DCFS) received a report which alleged that C.R., 8 years old, had severe bruises on her buttocks from a beating by John Richardson, Gayle's brother. C.R. received this beating for accusing Ray of sexually molesting her. Ray pleaded guilty to this offense and, in January 1989, was sentenced to five years' imprisonment.
On August 19, 1988, an adjudicatory hearing was held and both Ray and Gayle stipulated to count I of the shelter-care petition, which alleged the children were neglected because of an environment injurious to their welfare. At the dispositional hearing on September 27, 1988, the court adjudged C.R., J.R. and M.R. to be neglected minors, made them wards of the court and appointed the DCFS Guardianship Administrator as guardian of the respondent minors.
Five review hearings were held between August 19, 1988, and July 12, 1990. At each of these five review hearings, evidence was presented regarding Gayle and Ray's progress and achievement toward the stated goals of DCFS. Neither Gayle nor Ray satisfied these goals. A supplemental petition seeking a finding of unfitness and the termination of parental rights was filed by the State on July 12, 1990. The petition alleged Gayle and Ray failed to make reasonable efforts to correct the conditions which were the basis for the removal of the children from them, failed to make reasonable progress toward the return of the children within 12 months of the adjudication of neglect (Ill.Rev.Stat. 1989, ch. 40, par. 1501(D)(m)) and failed to protect the children from conditions in their environment that were injurious to their welfare (Ill.Rev.Stat.1989, ch. 40, par. 1501(D)(g)). Adjudicatory hearings were held on this petition on October 22, 1990, and November 7, 1990. On November 13, 1990, the court found Gayle unfit under sections 1(D)(m), (D)(g), and (D)(b) of the Act, and found Ray unfit pursuant to section 1(D)(m) of the Act (Ill.Rev.Stat.1989, ch. 40, pars. 1501(D)(m), (D)(g), (D)(b)). On January 8, 1991, the parental rights of Gayle Richardson and Oland Ray Belcher were terminated.
Gayle contends the trial court erred in failing to enter a written order finding the minors neglected at the adjudication hearing. She further contends the trial court erred in not noting in the docket entry for the adjudicatory hearing whether the neglect was the result of physical abuse to the minor inflicted by a parent, guardian, or legal custodian. Therefore, Gayle concludes the supplemental petition to terminate her parental rights fails to state a cause of action because no written order was entered and, thus, the 12-month period for purposes of section 1(D)(m) of the Act never began to run.
Section 2-21(1) of the Juvenile Court Act of 1987 (Juvenile Court Act) (Ill.Rev.Stat. 1989, ch. 37, par. 802-21(1)) requires the court, upon finding the minor neglected, abused or dependent, to "make and note in the minutes of the proceeding a finding of whether or not the minor is abused, neglected or dependent."
In the present case, the adjudicatory hearing was held on August 19, 1988. Gayle and Ray stipulated to count I of the shelter-care petition, which alleged the minors were neglected because of an environment injurious to their welfare. At the adjudicatory hearing, the trial court stated its intention to find the minors were neglected and such neglect was the result of physical abuse by the parent. Both Gayle and Ray agreed there was physical conduct of an improper nature by a relative (Gayle's brother) against C.R. The trial court did make a note, "Court finds that the respondent minors are neglected minors for the reasons as set forth in Count I of the petition." On September 27, 1988, at the dispositional hearing, the court made a finding of physical abuse inflicted by custodians, namely Ray and John Richardson (Gayle's brother). A written order was filed on October 22, 1988, to the same effect and contained language specifying the court's intention for the written order to take effect on the verbal pronouncement of *1205 September 27, 1988. This order satisfies the requirements of section 2-21(2) of the Juvenile Court Act, that the order find whether the neglect "is the result of physical abuse to the minor inflicted by a parent * * * and such finding shall appear in the order of the court." Ill.Rev.Stat.1989, ch. 37, par. 802-21(2).
We need not decide the issue of whether, for purposes of triggering the 12-month period of section 1(D)(m) of the Act (Ill. Rev.Stat.1989, ch. 40, par. 1501(D)(m)), the docket entry of August 19, 1988, or the written order filed October 22, 1988, is the starting point for that period. Twenty-three months elapsed between the August 19 docket entry and the filing of the supplemental petition and 21 months elapsed between the written order of October 22 and the filing of the supplemental petition. Either way, Gayle was given well over 12 months to make reasonable progress or reasonable efforts to regain custody of her children. She participated in all the court proceedings during this time period, attended numerous counseling sessions and attempted to meet the goals of the client service plans established by DCFS. Gayle cannot contend she was unaware the 12-month period had started to run, regardless of whether it began on August 19, September 27, or October 22.
The Fifth District recently held that for purposes of the 12-month period under section 1(D)(m) of the Act, the adjudication order is entered as of the date of the docket entry. (In re T.B. (1990), 195 Ill.App.3d 919, 924-25, 142 Ill.Dec. 366, 370, 552 N.E.2d 1107, 1111.) In that case, the docket entry was made 13 months before the petition to terminate the parental rights was filed, while the written order thereon was entered nine months before the petition to terminate the parental rights was filed. Thus, it was necessary for the court to decide whether the docket entry or the written order of adjudication was the benchmark to start the 12-month period running. However, as noted above, we need not decide that issue since given either date, Gayle had the requisite time to make reasonable progress or reasonable efforts necessary to regain custody of her children.
Both Gayle and Ray contend the trial court's finding of unfitness was against the manifest weight of the evidence. Because the parties are aware of the evidence, it will be referred to only as necessary.
The trial court concluded Ray was an unfit parent because he failed to make reasonable efforts to correct the conditions which were the basis for the removal of the children from him and that he failed to make reasonable progress toward the return of the children within 12 months after an adjudication of neglect. (Ill.Rev.Stat. 1989, ch. 40, par. 1501(D)(m).) The trial court also concluded Gayle had failed to protect the children from conditions within their environment which were injurious to their welfare, and failed to demonstrate a reasonable degree of interest and concern for the minors. (Ill.Rev.Stat.1989, ch. 40, pars. 1501(D)(g), (D)(b).) Both Ray and Gayle appeal those findings.
The Juvenile Court Act (Ill.Rev. Stat.1989, ch. 37, par. 801-1 et seq.) and the Act (Ill.Rev.Stat.1989, ch. 40, par. 1501 et seq.) govern the termination of parental rights. A finding of parental unfitness may be based on evidence sufficient to support any one statutory ground, even if the evidence is not sufficient to support other grounds alleged. (See, e.g., In re Edmonds (1980), 85 Ill.App.3d 229, 232-33, 40 Ill.Dec. 530, 533-34, 406 N.E.2d 231, 234-35.) Section 1(D)(m) of the Act defines an "unfit person" as "any person whom the court shall find to be unfit to have a child" because of the "failure by a parent to make reasonable efforts to correct the conditions which were the basis for the removal of the child from such parent, or to make reasonable progress toward the return of the child to such parent within 12 months after an adjudication of neglected minor, abused minor or dependent minor under the * * * Juvenile Court Act of 1987." (Ill.Rev.Stat. 1989, ch. 40, par. 1501(D)(m); In re K.S. (1990), 203 Ill.App.3d 586, 589, 148 Ill.Dec. 682, 683-84, 560 N.E.2d 1380, 1381-82.) A finding of unfitness may lead to the termination of parental rights and a court may *1206 take such action after finding it to be in the best interests of the minor. In re W.U. (1990), 199 Ill.App.3d 320, 145 Ill.Dec. 269, 556 N.E.2d 887.
On appeal, a court will not reverse a finding of unfitness unless it is against the manifest weight of the evidence. The trial court's opportunity to view and evaluate the parties and their testimony is far superior to that of the reviewing court. Accordingly, the trial court's findings should be given great deference. In re A.T. (1990), 197 Ill.App.3d 821, 829-30, 144 Ill. Dec. 283, 289, 555 N.E.2d 402, 408.
"`Whether a parent's efforts to correct the conditions which were the basis for removing her children are reasonable involves a subjective judgment based upon the amount of effort which is reasonable for a particular person. [Citations.] In contrast, whether a parent's progress toward return of the children within 12 months of being adjudicated neglected is reasonable involves an objective judgment based upon the amount of progress measured from the conditions existing at the time custody was taken from the parent. [Citations.] At a minimum, reasonable progress requires measurable or demonstrable movement toward the goal of reunification.'" (Emphasis in original.) In re L.L.S. (1991), 218 Ill.App.3d 444, 459, 160 Ill.Dec. 804, 814, 577 N.E.2d 1375, 1385, quoting In re Allen (1988), 172 Ill.App.3d 950, 956, 123 Ill. Dec. 184, 647, 651-52.
Ray contends he made reasonable efforts to correct the conditions which led to the removal of the children. Ray argues he admitted to Dr. Cozubal that he had a substance-abuse problem and he attended AA meetings; he maintains this demonstrates a reasonable effort to correct the poor conditions in his home.
While Ray's contentions may be true, he has made no reasonable efforts to correct the conditions which led to the removal of the children from his home. The three minors were removed from the home because of an environment injurious to their welfare. At the shelter-care hearing, evidence was presented that Ray had sexually abused C.R. and C.R. had been beaten by her uncle for accusing Ray of such conduct. Thus, the basis for the removal of the children was the sexual abuse of C.R. and not Ray's substance-abuse problems.
The issue then becomes whether Ray has made reasonable efforts to address this issue. We conclude, as did the trial court, he has not. Ray suggests, given his circumstances of incarceration and the resources available to him, he has made reasonable efforts. Ray met with Dr. Cozubal at least six times and at each meeting maintained he had not sexually abused C.R. At their final meeting, Ray refused to discuss the issue of sexual abuse. On March 15, 1990, Ray still maintained his innocence and on June 26, 1990, refused to discuss the issue at all. Even in his testimony at the hearing on the present supplemental petition, Ray maintained his version of the events, which depicted C.R. as the perpetrator and himself as the victim. Ray believed his fault was only in not stopping C.R.'s "curiosity." We do not believe Ray's admission of improper conduct but rejection of the term "molestation" qualifies as assuming responsibility for the conduct. (See In re S.D. (1991), 213 Ill.App.3d 284, 157 Ill.Dec. 143, 571 N.E.2d 1162.) Testimony was presented that the first step toward dealing with sexual abuse was for the abuser to assume responsibility for such abuse. Since Ray has failed to make this first step, the trial court's finding of Ray as an unfit parent for failing to make reasonable efforts to correct the conditions which led to the removal of the children was not against the manifest weight of the evidence.
Ray also alleges the trial court's finding that he failed to make reasonable progress toward the return of the children within 12 months of the adjudication of neglect was against the manifest weight of the evidence. We disagree. As this court stated in In re L.L.S.:
"`Reasonable progress' is an objective standard which exists when the court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently *1207 demonstrable and of such a quality that the court, in the near future, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent will have fully complied with the directives previously given to the parent in order to regain custody of the child." (In re L.L.S. (1991), 218 Ill. App.3d at 461, 160 Ill.Dec. at 816, 577 N.E.2d at 1387.)
Ray suggests, given the circumstances of his incarceration, he has made reasonable progress. Without repeating the previous discussion, we reject Ray's contention. Ray was uncooperative in counseling with Dr. Cozubal, sporadically attended AA meetings and has failed to acknowledge responsibility for the sexual abuse. This cannot be characterized as reasonable progress sufficient to determine the trial court's order was against the manifest weight of the evidence.
Likewise, Gayle maintains the trial court's findings of her unfitness under section 1(D)(b) and (D)(m) of the Act were against the manifest weight of the evidence. Gayle has not challenged the finding of unfitness under section 1(D)(g) of the Act, and since a finding on any one statutory ground would suffice to support the judgment (Edmonds, 85 Ill.App.3d at 232-33, 40 Ill.Dec. at 533-34, 406 N.E.2d at 234-35), we need not address the sufficiency of the evidence to support the other findings. In the exercise of our discretion, however, we elect to do so. Gayle contends her regular attendance at the counseling sessions, the well-planned visits with the children and regular employment constitute reasonable efforts. Gayle suggests further evidence of these efforts exists in the fact that she was granted unsupervised visits in 1989 and received a recommendation from DCFS to allow for unsupervised, overnight visits.
Gayle may have made some efforts or progress throughout the course of this case. However, a significant decline in this progress occurred after January 1990. The time frame in which the parent has to make reasonable progress is not limited to the 12 months after the adjudication of neglect. Rather, the court may consider the parent's conduct during the entire post-adjudication period. See In re A.T., 197 Ill.App.3d 821, 144 Ill.Dec. 283, 555 N.E.2d 402.
Looking at this entire period, Gayle has not made reasonable efforts or reasonable progress. She constantly vacillated between believing C.R. and believing that somebody other than Ray sexually abused C.R. Gayle never totally believed nor supported C.R. Gayle may have attended counseling sessions but missed some with J.R. in order to see Ray in prison. Gayle indicated that if forced to choose between her children and Ray, she would choose her children; however, her actions belie this choice. After Ray's arrest and even up to the filing of the supplemental petition, Gayle still maintained a relationship with him. The only requirements Gayle had to allow Ray to return to the home were for him to quit abusing drugs and alcohol and to maintain regular employment. She was unable to state what she could or would do to protect the children from Ray. Gayle was uncooperative in her counseling, had a hostile attitude, and often was sullen and uncommunicative during the sessions.
We conclude Gayle's failure to believe C.R. and accept the fact that Ray abused C.R., her vacillation between believing C.R. and believing Ray, and her indication of maintaining a relationship with Ray do not constitute reasonable efforts to correct the conditions which were the basis for the removal of the children from her, and certainly do not constitute reasonable progress toward the return of her children. The trial court's finding of unfitness as to Gayle was not against the manifest weight of the evidence.
Finally, Ray contends the trial court's decision to terminate his parental rights was not in the minors' best interest. Gayle contends the termination of her parental rights as to J.R. was not in J.R.'s best interest.
Once a finding of unfitness is made, all considerations must yield to the best interests of the child. (In re M.C. (1990), 197 *1208 Ill.App.3d 802, 144 Ill.Dec. 214, 555 N.E.2d 111.) The appropriate standard of review is whether the court's determination is against the manifest weight of the evidence. (In re I.D. (1990), 205 Ill.App.3d 543, 151 Ill.Dec. 94, 563 N.E.2d 1200.) We find it was in the best interests of all three minors to terminate the parental rights of Gayle and Ray.
Ray has yet to unequivocally accept responsibility for the sexual abuse. He also has not fully addressed his substanceabuse problems. To place the children back into an environment where they would be exposed to these unresolved problems is not in their best interests. Ray argues the possibility exists that he could overcome these problems and be reunited with the minors. Ray has had almost two years to address these problems. He has chosen not to do so and any possibility that he would now do so is highly unlikely.
The evidence established C.R. was placed with her maternal grandparents and was doing very well both academically and behaviorally. M.R. had adjusted well to her foster home and had a good relationship with her foster parents. She also was doing well in school and socially. J.R. had some behavioral problems but was making progress due to the counseling and the consistency and stability provided by her foster parents. Given Ray's unresolved problems, Gayle's constantly changing position toward the sexual abuse and her inability to specify how she would protect the minors from further sexual abuse by Ray, we conclude it was in the best interests of the minors to terminate the parental rights of Gayle and Ray.
Therefore, we conclude the trial court's termination of the parental rights of Gayle Richardson and Oland Ray Belcher was not against the manifest weight of the evidence. The trial court's judgment as to each is affirmed.
Affirmed.
LUND, P.J., and KNECHT, J., concur.