634 N.E.2d 1306 (1994)
262 Ill. App.3d 584
199 Ill.Dec. 952
In the Interest of D.J., J.J., J.J., and E.J., minors (The People of the State of Illinois, Petitioner-Appellee, v. Debbie Jackson, Respondent-Appellant).
No. 4-93-0812.
Appellate Court of Illinois, Fourth District.
Argued May 17, 1994.
Denied June 9, 1994.
*1307 Randell S. Morgan (argued), Kinate & Morgan, P.C., Fairbury, for respondent-appellant.
Thomas J. Brown, State's Atty., Pontiac, Norbert J. Goetten, Director, State's Attys. Appellate Pros., Springfield, Robert J. Biderman, Deputy Director, Rebecca L. White (argued), Staff Atty., for petitioner-appellee.
Paul G. Mason, Fairbury, for guardian ad litem.
Justice STEIGMANN delivered the opinion of the court:
In August 1993, the trial court found respondent, Debbie Jackson, to be an unfit parent based upon (1) her failure to make reasonable efforts to correct the conditions which were the basis for removal of the minors, (2) her failure to make reasonable progress toward the return of the minors within 12 months after the adjudication of neglect, and (3) her failure to protect the minors from conditions injurious to their welfare. (750 ILCS 50/1(D)(m), (D)(g) (West 1992).) In September 1993, the trial court terminated her parental rights as to three of her children.
Respondent appeals, arguing that because the conditions imposed by the trial court to regain custody of her children were satisfied within the statutory 12-month period of its finding of neglect, the court erred in terminating her parental rights.
We affirm.

I. BACKGROUND
In March 1991, the trial court adjudicated respondent's children, D.J. (born April 21, 1978), J.J. (born June 6, 1981), J.J. (born February 8,1983), and E.J. (born September 13, 1988), neglected. The trial court's neglect finding was largely based upon its conclusion that respondent's boyfriend, Jacob Rexroad, constituted an injurious environment for her children. At the April 1991 dispositional hearing, the court placed the children in the custody of the Department of Children and Family Services (DCFS).
The court's finding of neglect was largely based upon respondent's continued relationship with Rexroad. They began dating in the fall of 1990. On November 1, 1990, the trial court ordered respondent not to allow Rexroad any contact with D.J. In December 1990, the court expanded that order to include J.J., J.J., and E.J. The court found that on several occasions, Rexroad supervised the children alone and stayed overnight with respondent. Respondent ultimately lost custody of her children because she ignored the court's orders and maintained both her and her children's relationship with Rexroad.
Respondent never challenged or appealed the trial court's conclusion that Rexroad constituted an injurious condition to respondent's children, and with good reason. The court found that Rexroad had a long history *1308 of sexual perversion against children. Specifically, the trial court found as follows:
"[Rexroad] has an admitted 20-year history of molesting people and he has the `83 [indecent liberties with a child and contributing to the sexual delinquency of a minor] conviction[s]. * * *
* * * [Rexroad] had an extensive history of molesting children from the time he was a child himself, roughly 10 to 12 years old, until 1982, over a 20-year period.
This molesting involved initially his sisters [who were about four or five years old], * * * progressed to his brothers, and at a later time his nephews, which were then disclosed in `82.
* * * * * *
He molested his sisters until he was a little bit older and learned in school about the possibility of pregnancy, and then he stopped for fear of pregnancy * * * and he feared they might tell and he [then] began molesting his brothers who were younger at that point, between the ages of three and 11.
He molested his younger brothers until they were at an age when he thought they were becoming older and might disclose that abuse. The next molesting * * * was nephews * * * [which] took place over a later period in his adult life.
* * * * * *
* * * Rexroad had a minimal degree of empathy for his victims. He did not have a clear understanding of an emotional impact on his victims and pretty much said that from what he can tell, there had been no impact and they were doing just fine.
I could go on and on, but he got married and then he molested again after his marriage and was not interested in sex with his wife then because he was getting sexual fulfillment through molesting."
At the March 1991 adjudicatory hearing, the court ordered respondent to satisfy certain conditions in order to regain custody of her children. As one of these conditions, the courtagainordered her to disassociate herself and her children from Rexroad. The trial court found Rexroad a risk to the children and issued various orders prohibiting him from having any contact with them.
In March 1992, Rexroad was arrested for aggravated criminal sexual assault to a child under 13 years of age (not one of respondent's children). He remained in jail until July 1992, when he pled guilty to that offense in exchange for a 10-year prison sentence.
The State filed a timely petition to terminate respondent's parental rights, subsequently amended in November 1992, essentially alleging that respondent failed to terminate her relationship with Rexroad. In August 1993, the trial court concluded the termination hearing that it conducted over several days and found respondent to be an unfit parent, and subsequently terminated her parental rights regarding J.J., J.J., and E.J.
The central issue underlying the court's finding was respondent's continued relationship with Rexroad. The trial court summarized its findings as follows:
"Now, [respondent] through the fall of '90 and into January of '91 was aware that very major trouble had been caused in her life by Jacob Rexroad or the system's reaction to his presence. Her children had been removed against her wishes. She should have grasped at that time, I believe, that something was very wrong and that there was a choice to make.
* * * * * *
* * * [Respondent] defended Mr. Rexroad and believed he was not a risk even after his arrest, even after his conviction, when he had pled guilty, she maintained that he was innocent and was simply unwilling to accept that he was the risk that he was.
Now that's the chronology with which we are concerned and I think that's important because what the State has to prove as part of this, at least with the final ground, is that [respondent] failed to make reasonable progress toward the return of the minors within 12 months after the adjudication of neglect.
So did [respondent] make reasonable progress? Did she fail to protect? Did she fail to make efforts after the adjudication *1309 on March 20 of '91? Well, the evidence shows overwhelmingly, clearly and convincingly certainly, that [respondent] has miserably failed to appreciate the risk posed by Mr. Rexroad. She has absolutely, miserably failed to do that."

II. ANALYSIS
At trial and before this court, respondent argues that because Rexroad was arrested and incarcerated, the situation regarding Rexroad had been resolved as the court had directed (albeit not as a result of respondent's actions). Therefore, respondent claims that the court erred by granting the petition to terminate her parental rights, and she should regain custody of the children. She contends that the court erred in finding her unfit because that finding essentially was based upon her "attitude."
The trial court found respondent to be an unfit parent pursuant to sections 1(D)(m) and 1(D)(g) of the Adoption Act (Act). Section 1(D)(m) provides as follows:
"[F]ailure by a parent to make reasonable efforts to correct the conditions which were the basis for the removal of the child from such parent, or to make reasonable progress toward the return of the child to such parent within 12 months after an adjudication of neglected minor[.]" (750 ILCS 50/1(D)(m) (West 1992).)
Accordingly, section 1(D)(m) of the Act provides two alternate grounds for a finding of unfitness: that the parent failed to make either (1) reasonable efforts to correct the conditions which were the basis for the removal of the child, or (2) reasonable progress toward the return of the child within 12 months after an adjudication of neglect. See In re L.L.S. (1991), 218 Ill.App.3d 444, 458-59, 160 Ill.Dec. 804, 814, 577 N.E.2d 1375, 1385.
A trial court's finding of parental unfitness will not be reversed on review unless it is contrary to the manifest weight of the evidence. (In re E.S. (1993), 246 Ill. App.3d 330, 337, 186 Ill.Dec. 289, 294, 615 N.E.2d 1346, 1351.) The trial court is in a position superior to this court to view and evaluate the witnesses and their testimony. Accordingly, its findings are given great deference on review. In re C.R. (1991), 221 Ill.App.3d 373, 379, 163 Ill.Dec. 779, 783, 581 N.E.2d 1202, 1206.
On March 20, 1991, the trial court found respondent's children to be neglecteda finding not the subject of this appeal. Subsequently, the court ordered respondent not to have any further contact with Rexroad. In essence, the trial court gave her the choice between keeping her children or maintaining a relationship with him. She nevertheless failed to disassociate herself from Rexroad.
On March 10, 1992just short of 12 months after the neglect findingRexroad was arrested and taken into custody for aggravated criminal sexual assault. Because Rexroad was removed from the children's environment on March 10, 1992, respondent argues that she should regain custody of her children. She claims that the trial court's condition was satisfied within the statutory 12-month period and that Rexroad poses no danger to the children from prison. (See 750 ILCS 50/1(D)(m) (West 1992).) We disagree.
In terminating respondent's parental rights, the trial court found that respondent chose Rexroad over her children, stating as follows:
"[Respondent] is absolutely committed to Jacob Rexroad. If he were out today, she would be with him.
* * * * * *
* * * If there was ever a pedophile, it is Mr. Rexroad. * * *

* * * * * *
So what I'm saying is that there are different types of offenders and in my opinion [Rexroad] falls towards the person who has the entrenched orientation toward children.
* * * * * *
* * * He is a risk of extremely major proportions.
* * * * * *
[Rexroad] here did not molest these children, but [he] is the kind of person who would[] [if] given the opportunity, and the *1310 fact that he didn't [] we are just fortunate. Quite frankly, he didn't molest these children probably because [DCFS] removed the children. Had the children stayed there with [respondent], those children would have been scarred further.
We are not required, I find, to let children be molested first. It is sufficient if the risk is shown. Well, [Rexroad], as I said, presented that risk, but now he's gone, but he was there and he was a threat from April of '91 to [March] of '92[,] and he was no longer a threat simply because the criminal justice system finally caught up with him. * * *
[During that time, Rexroad] is there with [respondent] and is a threat to the children had the children been with [respondent], and it was her attitude that kept those children away from home, it was her attitude that kept the children away from their mother, and that attitude continued, clearly, until his incarceration in July of '92, when, because of his incarceration, he's no longer a risk and, quite frankly, it continues to this day.

Now, can ashould a finding of unfitness be made because of an attitude problem? Well, this attitude problem caused the children to be in such a risk that they could not be with their mother. [Respondent] chose Jacob Rexroad over her children. She chose an absolutely dangerous man over her children and thereby deprived them of their parental home.

She had an absolutely closed mind about it. She would listen to no one." (Emphasis added.)
In L.L.S., this court discussed the distinction between reasonable efforts and reasonable progress as follows:
"`Whether a parent's efforts [ (emphasis in original) ] to correct the conditions which were the basis for removing her children are reasonable involves a subjective judgment based upon the amount of effort which is reasonable for a particular person. [Citations.] In contrast, whether a parent's progress [(emphasis in original)] toward return of the children within 12 months of being adjudicated neglected is reasonable involves an objective judgment based upon the amount of progress measured from the conditions existing at the time custody was taken from the parent. [Citations.] At a minimum, reasonable progress requires measurable or demonstrable movement toward the goal of reunification.` [ (Emphasis added.) ] In re Allen, 172 Ill.App.3d [950] at 956 [123 Ill.Dec. 184, 188-89], 527 N.E.2d [647] at 651-52." L.L.S., 218 Ill.App.3d at 459,160 Ill.Dec. at 814, 577 N.E.2d at 1385.
The L.L.S. court further explained the reasonable progress requirement as follows:
`"Reasonable progress' is an objective standard which exists when the court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the near future, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent will have fully complied with the directives previously given to the parent in order to regain custody of the child." (Emphasis in original.) L.L.S., 218 Ill. App.3d at 461 [160 Ill.Dec. at 816], 577 N.E.2d at 1387.
Thus, section 1(D)(m) of the Act requires the parent to make the necessary effort or progress toward correcting the injurious conditions underlying the neglect finding in order to regain custody of the children. Accordingly, respondent's argument that Rexroad's arrest within 12 months of the neglect finding satisfied this requirement misses the point.
Respondent was faced with a choice between her children or Rexroad, and the trial court found that she chose Rexroad. The happenstance that Rexroad was removed from the children's environment at the "eleventh hour" due to his arrest does not relieve respondent of that choice. (See In re M.C. (1990), 197 Ill.App.3d 802, 806, 144 Ill.Dec. 214, 216, 555 N.E.2d 111, 113 (respondent's failure to terminate contact with child's father as ordered supports finding of failure to make reasonable efforts and *1311 reasonable progress).) In other words, Rexroad's arrest and consequential removal did not automatically satisfy respondent's responsibility to make reasonable efforts or reasonable progress.
Respondent notes that Rexroad continuously remained in jail from his arrest on March 10, 1992, and in fact still remains in custody as he completes his 10-year prison sentence. However, the trial court specifically found that respondent is completely committed to Rexroad, would continue their relationship were he free, and indeed does continueto the extent possiblethe relationship while he is in prison. By focusing upon the acts and intentions of respondent, the trial court properly applied section 1(D)(m) of the Act. Furthermore, we hold that Rexroad's arrest and incarceration within 12 months of the neglect finding was merely a fortuitous event for respondent and is deserving of as much or as little weight in the trial court's determination of unfitness as the court chooses to give it.
Moreover, the trial court could not confidently expect the criminal justice system to continue providingfortuitouslyprotection to the children from Rexroad. After all, even with Rexroad serving a 10-year prison sentence, no one can say with certainty how long he will in fact remain behind bars, given the pressures overcrowding is causing the administration of this State's prisons, as well as the availability to Rexroad of good time, compensatory good time, and other credits against his sentence that might reduce his actual time of incarceration. Thus, the court appropriately had to evaluate respondent as the ultimate protector of her children from Rexroad. When so evaluated, this record shows she failed badly.
In In re A.D. (1990), 199 Ill.App.3d 158, 162, 145 Ill.Dec. 181, 185, 556 N.E.2d 799, 802, the trial court required the respondent mother to choose between regaining custody of her children or maintaining a relationship with their stepfather. This court approved of holding the respondent mother to that choice and wrote as follows:
"[Respondent mother] will have to choose whether she wants to include Billy in her life or whether she wants custody of her children. * * * [W]e have no hesitancy in approving the trial court's action putting [her] to this test.
We hold that a parent in the position of [respondent mother] who * * * has not clearly and unequivocally chosen, to the trial court's satisfaction, the safety of her children over a continued relationship * * * is `unwilling or unable' * * * to care for or protect her children, and it is in their best interest that they be removed from their parent's custody until such time, if ever, that the court is so satisfied." (Emphasis added.) A.D., 199 Ill.App.3d at 162, 145 Ill.Dec. at 184, 556 N.E.2d at 802.
At the neglect hearing in this case, the trial court found that respondent was unwilling or unable to properly care for her children. Accordingly, it placed them in the custody of DCFS, and, as in A.D., required respondent to choose between her relationship with Rexroad and her children.
At the termination hearing, the court found that respondent failed to make the correct choice to regain custody. Respondent's children were adjudicated neglected in March 1991, and the court found that through August 1993, respondent failed to choose custody of her children over the relationship with Rexroad. The court in A.D. held that the trial court may remove custody from a parent "until such time, if ever," that the parent corrects the injurious environment to the children. (A.D., 199 Ill.App.3d at 162, 145 Ill.Dec. at 184, 556 N.E.2d at 802.) We now add that the trial court does not have to wait forever for that parent to make reasonable efforts or progress toward regaining custody of the children. In other words, parents must make the correct choice, and the law does not afford them an unlimited period of time to do so.
The trial court found that respondent's failure to terminate her relationship with Rexroad and remove him from the children's environment herself (as opposed to the criminal justice system's doing so for her) constituted a failure to make reasonable efforts or reasonable progress. The court concluded that but for the fortuity of Rexroad's incarceration, respondent would be actively *1312 pursuing that relationship. Based upon this record, the court did notand could not conclude that her "progress" indicated nearly complete compliance with its directives for the return of the children. (See L.L.S., 218 Ill.App.3d at 461, 160 Ill.Dec. at 816, 577 N.E.2d at 1387.) Instead of taking steps toward terminating the relationship with Rexroad, respondent clearly demonstrated her intent to continue it. Thus, respondent failed to take any steps necessary to satisfy either the reasonable efforts or reasonable progress standards. Accordingly, we hold that the trial court's decision that respondent failed to make any reasonable effort or progress toward termination of her relationship with Rexroad was not contrary to the manifest weight of the evidence.
Respondent also claims that the trial court erred in finding her unfit based upon her failure to protect the children from conditions within their environment injurious to their welfare. (See 750 ILCS 50/1(D)(g) (West 1992).) Because we affirm the trial court's findings of unfitness based upon respondent's failure to make reasonable efforts or reasonable progress, we need not consider this argument. See C.R., 221 Ill.App.3d at 378, 163 Ill.Dec. at 782, 581 N.E.2d at 1205 (finding of parental unfitness appropriate if based upon evidence sufficient to support any one statutory ground, even if insufficient to support other grounds alleged).

III. CONCLUSION
For the reasons stated, we affirm the trial court's finding of unfitness and termination of parental rights.
Affirmed.
McCULLOUGH, P.J., and LUND, J., concur.