*In re* MICHAEL FLYNN *et al.*, Minors—(MICHAEL FLYNN *et al.*, Appellants).

(No. 73-188; )

Third District—September 27, 1974.

Edward A. Berman, of Schlifkin & Berman, of Chicago, for appellants.

Rafael Toruno, Assistant State's Attorney, of Joliet, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Appellants, Fred Michael Flynn and Rita Flynn, husband and wife, appeal from an order of the Circuit Court of Will County which found them unfit parents by reason of depravity and terminated the parental rights of appellants in their three children. In the court order, the Department of Children and Family Services through an administrator was appointed as guardian for the three children with the power to consent to adoption.

From the record it appears that the appellants were married in 1966. In 1972, Fred Flynn adopted his wife's three children by her previous marriage and such children and their ages are as follows: Michael Britt Flynn, age 13; Rita Jackie Flynn, age 12; and Michelle Stacey Flynn, age 10. During the summer of 1972, Fred Flynn was driving a taxi cab and had a regular passenger named Harold Miller. Miller told him of his desire to meet and marry a young girl, and, also of his ability to help Flynn out financially. Flynn was heavily in debt at that time. In the next few months Flynn arranged several meetings between Miller and Flynn's daughter, Rita Jackie Flynn, age 12. Miller again spoke specifically of money, and, on March 13, 1973, he gave Flynn approximately $28,000, mostly or all in bonds. Four days later, the Flynn family met Miller at a Holiday Inn Motel. Thereafter Miller and Jackie departed for South Carolina, where they were to be married. It was indicated that Jackie was told by her mother that she did not have to go if she did not want to, but that it would be better for her to go and that she could marry Miller if she wanted to; that she could thereby have a college education and everything else she wanted. It was understood that the parties were

to be married in South Carolina. Daughter Jackie testified that she knew what she was doing when she left the State with Miller.

Miller and Jackie spent three nights in motels on the way to South Carolina before being apprehended by police in Ashville, North Carolina, as a result of information furnished authorities. There was no evidence of any sexual acts as between the parties. Jackie was returned to Illinois and the Will County State's Attorney filed a petition thereafter seeking a declaration that the three Flynn children were neglected and that the Flynns were unfit parents. In the petition, termination of Flynns' parental rights in the three children was requested as well as the appointment of a guardian with power to consent to adoption.

Hearings were held pursuant to the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, §§ 704, 705). The court then found that the conduct of the parents in the situation concerning Jackie with Miller constituted "depravity" within the meaning of the Adoption Act (Ill. Rev. Stat. 1973, ch. 4, § 9.1—1(D)(h)). The Flynns were declared to be unfit parents in the order. It is not clear from the record that a finding of neglect of the children was made. (See Ill. Rev. Stat. 1973, ch. 37, §§ 702—4(b), 704—8.) Apparently, the determination was made on the sole basis of the actions of the Flynns with respect to Jackie in relation to Miller.

■■ On appeal in this court, defendants contend that the finding that appellants are "depraved," even assuming that the single act of the arranged marriage was shown, failed to overcome the presumptions concerning custodial rights of parents to their children. While the appellants contend that the evidence did not justify a finding of unfitness by reason of depravity, they also specifically question the application of the trial court's finding terminating their parental rights to the other two children, Michael and Michelle Flynn. They point out that under the precedents in Illinois, "[i]n order for the court to empower a guardian to consent to the adoption without the consent of the natural parent, the natural parent must be found to be unfit (Ill. Rev. Stat. 1971, ch. 4, par. 9.1—8), and such unfitness must be proven by clear and convincing evidence." (*In re Perez*, 14 Ill.App.3d 1019, 1020, 304 N.E.2d 109, 110-111 (First Dist. 1973); See also *In re Adoption of Walpole*, 5 Ill.App.2d 362, 125 N.E.2d 645 (Third Dist. 1955).)

■■ It is pointed out that with the standard of proof required, the evidence shows, in effect (as asserted by the prosecution) that the Flynns "sold" their daughter Jackie to a Harold Miller. Appellants argued that the court erred in failing to admit into evidence Miller's Federal gift tax return which showed the money given to the Flynn's as a gift. We conclude, however, that, even considering the tax return, it is apparent from the facts in the record that the money was given in exchange for Jackie,

or at least in consideration of the Flynns' consent to her marriage to Miller. It was shown that the money was given just 4 days before Jackie and Miller left the State, and, in addition thereto, appellant Flynn himself, in a statement to police, admitted that the money was part of the overall transaction.

■■ On the basis of the record, therefore, we cannot say that the trial court committed reversible error in determining that the conduct involved in such transaction was such as to be considered "depravity" within the meaning of the Adoption Act. It was shown that Flynn did not bother to check on Miller's background, character or financial status and it is clear that the Flynns had not known Miller for more than a few months. They only saw him a few times when Jackie saw him. It is also apparent that the Flynns needed money badly and nearly all of it was spent within a month and a half of its receipt. They permitted Jackie to consent to the marriage when Miller suggested it and permitted her to travel alone with Miller by automobile to South Carolina. They agreed to fly there themselves, apparently to lie about Jackie's age and they told their other children to tell other people that Jackie was in California with a sick aunt. They even represented to a relative that Jackie had run away. On behalf of the appellants, it was disclosed in the record that they showed affection for their children and adequately cared for them. The trial court apparently felt that the action in connection with the 12-year-old daughter raised a serious question as to the Flynns' real interest in their children.

Even if the court were to accept the proposition that a contract to "sell" a child is valid, under some circumstances, if it is in the child's best interest, even though contrary to public policy (see 59 Am.Jur.2d *Parent and Child* § 37), the record shows that the Flynns could not possibly have determined that the marriage would be in the best interests of 12-year-old Jackie. It is apparent from the record that the trial court properly felt that the Flynns abandoned Jackie's interests in favor of their own.

Depravity is "an inherent deficiency of moral sense and rectitude." (*Stalder v. Stone*, 412 Ill. 488, 498, 107 N.E.2d 696 (1952).) While "a single deviation from moral principles does not *per se* establish depravity" (*Young v. Prather*, 120 Ill.App.2d 395, 256 N.E.2d 670 (Fourth Dist. 1970)), the acts of the parents in the cause before us show a deficiency in moral values. It is true that Jackie consented to the marriage and claimed to know what she was doing. The trial court, however, found that Jackie's 12-year-old mind was sufficiently immature and that she was effectively brainwashed by her parents into agreeing to marry Miller. The trial judge was in the best position to make such finding and

as a court of review we cannot say that it was clearly contrary to the evidence.

■■ We find more difficulty in the questions relating to custody and parental rights in the remaining two Flynn children. Normally, a finding as to unfitness of parents would allow the trial court to terminate the parental rights of all the children. While the conduct of the Flynns was clearly wrong, it was specifically related to Jackie alone.

Nevertheless, we cannot say, on the basis of the record before us, that the order of the trial court finding unfitness of the parents as to the children was contrary to the manifest weight of the evidence. We recognize the difficulty of the parents in regaining custody of children, once they are taken away, even if the parents show signs of complete rehabilitation. We feel, however, that the trial court was in the best position to observe the parties and the children and while we might have hesitated in depriving the parents of the custody of Michael and Michelle Flynn, we cannot say that, on the record, the order of the trial court was contrary to evidence.

The order of the Circuit Court of Will County in this cause is, therefore, affirmed.

Affirmed.

SCOTT, P. J., and DIXON, J., concur.