*In re* DAISY CAMILLE HARPMAN *et al.*, Alleged to be Neglected Minors (The People of the State of Illinois, Petitioner-Appellee, v. David J. Rottinghaus *et al.*, Respondents-Appellants).

Fourth District   Nos. 4—85—0883 through 4—85—0885 cons.

Opinion filed August 19, 1986.

Tracy A. Smith, of Bloomington, for appellant Linda Rottinghaus.

Alan J. Novick, of Bloomington, for appellant David J. Rottinghaus.

Ronald C. Dozier, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn Klingler, all of State's Attorneys Appellate Prosecutor, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

The respondent parents, David and Linda Rottinghaus, appeal from orders of the circuit court of McLean County which (1) found the three minors, Daisy Camille Harpman, Emily Rose Rottinghaus, and Violet Joy Rottinghaus, to be abused by reason of an injurious environment pursuant to section 2—4(2)(b) of the Juvenile Court Act (Act) (Ill. Rev. Stat. 1983, ch. 37, par. 702—4(2)(b)); (2) transferred guardianship of the minors to the guardianship administrator of the Department of Children and Family Services (Department) with authority to place pursuant to section 5—7 of the Act (Ill. Rev. Stat. 1983, ch. 37, par. 705—7); and (3) placed respondents under an order of protection pursuant to section 5—5 of the Act (Ill. Rev. Stat. 1983, ch. 37, par. 705—5).

In a prior appeal we reversed the orders of wardship for failure to state a cause of action for neglect. (*In re Harpman* (1985), 134 Ill. App. 3d 393, 480 N.E.2d 873.) On remand the State amended its petitions to allege abuse. The previous allegations of neglect and the supporting facts were stricken, and allegations concerning David's sexual abuse of his female children by a prior marriage, the denial by David and Linda that such abuse had occurred and their failure to engage in meaningful therapy to provide a proper family environment, and their failure to resolve the prior issue of sexual abuse were substituted. The net effect was to change the stated cause of action from one of neglect by reason of not providing proper care for the minors to one of abuse by reason of maintaining an environment injurious to their welfare. This was in accordance with our mandate.

Respondents first filed a motion to dismiss which was denied by

the trial court. After a shelter-care hearing at which temporary custody was granted to the Department, the court proceeded to a second adjudicatory hearing on October 22, 1985. At this hearing the court took judicial notice of all the evidence adduced at the first adjudication. An analysis of this evidence was not reached in our prior opinion, which was concerned with procedural questions. In addition, evidence was received from a child and adolescent therapist from the McLean County Center for Human Services. At the conclusion of the hearing the court found the petitions proved and entered the order of wardship as to all three minors.

The second dispositional hearing was held on November 25, 1985. At this hearing evidence was taken from a caseworker from the Department and from Linda. At the conclusion of this hearing the court ordered guardianship in the Department with authority to place as described above and entered an order of protection against the parents, David and Linda, for 36 months.

Three issues are raised in this appeal: (1) whether the amended petitions stated a cause of action; (2) whether the findings upon which the adjudications were based is against the manifest weight of the evidence; and (3) whether section 4—6(3) of the Act (Ill. Rev. Stat. 1983, ch. 37, par. 704—6(3)) is limited to minors within the same family group.

Some review of the evidence is necessary. It must be borne in mind that this case involves only a guardianship with authority to place coupled with a protective order. It does not involve the termination of parental rights. Counsel have cited no cases with the same general factual situation as exists here. All of the authorities cited concern the termination of parental rights, a much more drastic intrusion into the family structure, and to that extent are less persuasive. The critical question to be examined is this: Given the fact that David had previously been adjudged unfit because of sexual abuse of his daughters by a prior marriage and had been denied visitation rights, and given the further fact that there is no direct evidence of sexual or other abuse of the children by the present marriage, does the prior adjudication amount to an injurious environment within the meaning of the statute? We answer in the affirmative and hold that the trial court was correct in its adjudications and dispositions.

At the adjudicatory hearing after remand on October 22, 1985, the trial court took judicial notice of the evidence presented at the former adjudicatory hearing. This was briefly touched upon in our prior opinion but not elaborated. Since the question of the weight of the evidence has been raised in this appeal, a brief recapitulation of

that evidence is in order.

The court admitted into evidence the files of a Sangamon County proceeding in which David was found unfit by reason of sexual abuse of his daughters by his prior marriage. A stipulation was entered into that the David Rottinghaus who is a respondent in the instant case was the same person who was the subject of the Sangamon County proceedings. That matter is now *res judicata* and therefore cannot be further controverted. Suffice it to say, David was found unfit and denied visitation privileges with those children.

The State called Maggie Wright, a caseworker with the Department, who testified that she had met with David and Linda on several occasions. David denied twice to her that he had abused the children of his former marriage. She stated that she had not observed any signs of physical abuse to the minors involved here.

Next called for the State was Stan Case, an investigator for the Department. He recounted an incident wherein he met with David at the hospital when Linda was giving birth to Violet, the third child of the present marriage. He asked for permission to examine Daisy, the first child, for a bruise. David granted permission but also said, "If her vagina is red, that's because of a urinary infection." Case found this suspicious. On cross-examination he stated that no bruise was found and he never saw any reports that the minors were abused. David denied to him also that he had had any past problem of abuse.

Finally, the State called Carol Barrett, a home interventionist of the Department. She related an incident which occurred when she was supervising a visit by David and Linda with the children. He noticed David staring at his daughters who were playing around his feet. He stood up and stated he was going to the bathroom. Barrett observed that he was in a state of sexual excitement. He returned about 15 minutes later looking "beet-red," in Barrett's words, and with two wet spots appearing on his trousers. The State then rested.

Respondents' evidence was largely of a good-character variety. Robert Cornwell, Linda's former employer at a community center, stated that she was involved there with children as a preschool teacher and secretary and did a very good job. Mary Harpman, Linda's mother, stated that Linda did a very good job with the children and that prior to the filing of the petitions she knew nothing of David's history of child abuse. Betty Rottinghaus, David's mother, testified that respondents acted as normal parents.

Linda testified that she pursued a major at Illinois State University in home economics with concentration in child and family community services. Her goal was to be a day-care director or teacher and

she was three hours shy of her degree. She stated that she had worked with many children, including abused children, and had never observed any signs of abuse in her own children. She first learned of David's history when she talked with Maggie Wright at the hospital when giving birth to Violet. She once inquired of David's mother about the matter, but his mother did not want to talk about it. She regarded whatever happened as part of David's breakup of the prior marriage and as "part of the past."

David testified that he had worked at various jobs, such as a mechanic, auto body repair, picking up garbage, and truck driving. His mother had been appointed as his conservator. He denied any sexual abuse of his daughters of the prior marriage or of his daughters by the present marriage.

A psychological evaluation of David by Dr. Gerald Spence taken for the Bureau of Disability Adjudications Services was admitted into evidence. It showed that David had a full-scale IQ score of 62 and functioned intellectually in the mentally retarded range.

That was the evidence at the prior adjudicatory hearing. As has been indicated, the trial court considered it together with the testimony of Connie Patterson, called by the State, at the second adjudication. Patterson was a child and adolescent therapist at the McLean County Center for Human Services. She held a master's degree in clinical psychology from Illinois State University but had not been certified by any State board. She had testified in court on five previous occasions and had been accepted as an expert each time. Approximately one-half of her caseload involved sexual abuse of children and she received referrals from the Department for therapy. Over objection of respondents, the trial court qualified her as an expert.

Patterson testified concerning her knowledge of behavior problems found in those who commit sexual abuse. She stated she had never met respondents or been involved in any therapy with them. Also, she had not read their files. The initial step in therapy for parents who have committed sexual abuse against their children is to get the parents to define the problem and learn to take responsibility for the problem. Usually the perpetrators are meeting needs by abusing children. The behavior can be compulsive. The best candidates for therapy are those who can take responsibility for their actions and understand, too, that their children have a need not to be abused. The first phase of therapy is often to overcome denial. Without hurdling the barrier formed by denial, Patterson stated there is little or no progress that can be made. If the behavior is compulsive, it is then likely to occur again. It is not possible, in Patterson's opinion, for par-

ents by themselves to correct abusive behavior between themselves and their children. Therapeutic help is needed. The spouse of an abusive parent plays a significant role in recurrent behavior. If the spouse does not believe the behavior occurs, she will not take steps to prevent it. Abuse most often occurs in the father-daughter relationship. Patterson testified that in the literature the lowest frequency of abuse has been one instance, but discussions of frequency must be qualified in that the literature deals with reported instances of abuse. She could not authoritatively speak on whether an abusive person is more likely to abuse the same victim as opposed to picking another individual as the victim. She stated that anyone could be a victim if they were available.

The court found that the allegations of the petition had been proved and entered an order of wardship. The second dispositional hearing was held on November 25, 1985. At that hearing Maggie Wright again testified as did Linda.

Wright testified as to extensive health problems with all three minors. Daisy had recurring urinary tract infections; Emily had had meningitis; Violet had been in the hospital for an intestinal infection and upper respiratory bronchial problems. She stated that respondents had been hostile toward her and had filed a formal complaint about Daisy being placed in a Catholic school.

Linda testified that she and David were separated but not divorced. She had made arrangements for David to see a child psychologist and he had been making weekly visits to that therapist for two or three months prior to the hearing. She also stated that she and David were involved in a battery case wherein Maggie Wright was the complaining witness. Wright's dispositional report cast doubt on the reality of respondents' separation.

At the conclusion of the hearing the court vested guardianship in the Department with authority to place and entered a 36-month order of protection against respondents.

Respondents' first contention is that the amended petitions do not state a cause of action for abuse. In pertinent part the original petitions stated:

> "The minor is neglected, under Chapter 37, Section 702—4, IRS, by reason of the following facts:
>
> 'That the parents of the above minor[s] have not provided the proper care for [their] well-being in that:
>
> A) on 9 September 1982 the Sangamon County Circuit Court, Juvenile Division, found David Rottinghauss [sic] "unfit" as a father of two other of his female children, Sarah and Su-

san, by reason of the fact that he had sexually abused each of them;

B) since 9 September 1982 both David Rottinghauss [sic] and Linda Rottinghauss [sic] have denied any sexual abuse had occurred to Sarah and Susan, and have not engaged in any meaningful therapy to provide a family environment wherein such sexual abuse would not occur again;

C) in not resolving the prior issue of sexual abuse as to Sarah and Susan, they continue to expose the above minor[s] to a substantial risk of sexual abuse by David Rottinghauss [sic].' "

The amended petitions struck the opening sentence and substituted the following: "that [the minor] is abused in that her environment is injurious to her welfare in that:" The subparagraphs (A) through (C) remained the same.

Respondents argue strenuously that in the absence of any allegation of actual abuse, in the sense of damage or hurt, to the minors, the petitions fail to state a cause of action. This contention flies in the face of the clear wording of the statute.

As we explained in our prior opinion (*In re Harpman* (1985), 134 Ill. App. 3d 393, 480 N.E.2d 873), an injurious environment formerly was part of the allegation of neglect. (Ill. Rev. Stat. 1979, ch. 37, par. 702—4(b).) By amendment in 1982 that section was expanded to include both neglected and abused minors. Neglected minors are defined in subsection (1) of the statute (Ill. Rev. Stat. 1983, ch. 37, par. 702—4(1)). Abused minors are defined in subsection (2) (Ill. Rev. Stat. 1983, ch. 37, par. 702—4(2)). Subparagraph (a) of subsection (2) sets forth five separate forms of abuse in the sense of damage or hurt to a minor. Subparagraph (b), cast in the alternative to subparagraph (a), sets forth injurious environment as a species of abuse in contradistinction to the acts of physical abuse found in subparagraph (a).

■ It follows as a matter of good pleading that if the sole ground for the petition is an injurious environment, it cannot, and should not, include any allegations of physical abuse. The petitions in the instant case, as amended after our mandate, meet this test.

Respondents next argue that the allegations of the petitions are insufficient and consist of conclusions of law. We do not agree.

■ "Injurious environment" by its nature is an amorphous concept. Prior cases, discussing neglect under the former statute when injurious environment was part of that concept, generally agreed that neglect could not be defined with particularity, but rather each case should proceed on its own facts. *In re Christenberry* (1979), 69 Ill.

App. 3d 565, 387 N.E.2d 923.

■ It has always been held that proceedings under the Juvenile Court Act are civil in nature. (*In re Harpman* (1985), 134 Ill. App. 3d 393, 480 N.E.2d 873; *In re Christenberry* (1979), 69 Ill. App 3d 565, 387 N.E.2d 923.) Thus, the general rules of civil pleading apply. "The essential test of the sufficiency of the complaint is whether it reasonably informs the defendant of a valid claim under a general class of cases of which the court has jurisdiction." *Skinner v. Mahomet Seymour School District No. 3* (1980), 90 Ill. App. 3d 655, 656-57, 413 N.E.2d 507, 508.

■ In the instant case the statutory ground was set forth together with the supporting facts growing out of the prior Sangamon County proceeding. This was adequate to inform the respondents as to what the State intended to prove, *i.e.*, an injurious environment.

Nevertheless, respondents continue to argue that unless there are allegations of current sexual abuse, a cause of action is not stated, even though the allegations in the petition are clear and precise. We have already, somewhat tediously, explained that current sexual abuse is not part of a cause of action for injurious environment. There was no basis for dismissing the petitions and the trial court was correct in its ruling in denying the motions to dismiss.

■ We turn next to the issue raised concerning the evidence. Before proceeding, we think it helpful to pause briefly to consider what the evidentiary burden is in cases such as the instant one. Since the proceedings are civil, we may ignore the standard of proof of beyond a reasonable doubt which is characteristic of criminal proceedings. There are at least two other gradations: (1) clear and convincing, and (2) preponderance, or manifest weight. The prior authorities are in a rather clouded state on the point. For example, in *In re Brown* (1981), 86 Ill. 2d 147, 152, 427 N.E.2d 84, 87, it would appear that the two standards are the same:

"The unfitness of a parent must be proved by clear and convincing evidence. (*In re Dixon* (1980), 81 Ill. App. 3d 493; *In re Hrusosky* (1976), 39 Ill. App. 3d 954.) We agree with the appellate court cases holding that a finding of unfitness will not be reversed unless it is against the manifest weight of the evidence. (*In re Dixon* (1980), 81 Ill. App. 3d 493, 502; *In re Bennett* (1980), 80 Ill. App. 3d 207, 210; *Freeman v. Settle* (1979), 75 Ill. App. 3d 799, 801; *Blakey v. Blakey* (1979), 72 Ill. App. 3d 946, 947.) The rationale underlying this standard is that the trial court's opportunity to view and evaluate the parties and their testimony is superior to that of a reviewing court. Accord-

ingly, the trial court's findings should be given great deference. See *In re Stilley* (1977), 66 Ill. 2d 515, 520."

The *Dixon* court commented indirectly on the problem when it said:

"The unfitness of a parent under any of these grounds must be proven by clear and convincing evidence (*In re Love* (1977), 50 Ill. App. 3d 1018, 366 N.E.2d 139; *In re Hrusosky* (1976), 39 Ill. App. 3d 954, 351 N.E.2d 386). 'Clear and convincing evidence means proof which should leave no reasonable doubt in the mind of the trier of the facts concerning the truth of the matter in issue.' (*In re Jones* (1975), 34 Ill. App. 3d 603, 607, 340 N.E.2d 269, 273.)" (*In re Dixon* (1980), 81 Ill. App. 3d 493, 501-02, 401 N.E.2d 591, 597-98.)

The court then went on to quote with approval a statement by the trial court in *Dixon* that "reasonable doubt" and "clear and convincing" were different, but that "clear and convincing" was "substantially equivalent" to "reasonable doubt." *In re Dixon* (1980), 81 Ill. App. 3d 493, 502, 401 N.E.2d 591.

We will not attempt the Sisyphean task of reconciling all of the prior authority on the question. However, it appears to us that in modern times at least three gradations of the burden of proof have become embedded in the law. The heaviest is "beyond a reasonable doubt," the intermediate is "clear and convincing," and the lightest is "preponderance" or "manifest weight." To a certain extent these blend into one another and no Chinese wall can be constructed between them. About all that can be said is that the heavier will include the lighter, but all are not the same. For a general discussion of the problem see McCormick, Evidence secs. 339, 340, 341, at 793-802 (2d ed. 1972).

In the juvenile-law area it seems logical to us to say that the more drastic the relief sought, the heavier the burden of proof. The authorities cited above well establish that in termination-of-parental-rights cases, the standard must be clear and convincing. In cases of lesser intrusion into the family structure, as in the instant case, the lesser burden of preponderance, or manifest weight, will obtain.

The case at bar presents an unusual factual situation. There are two separate families, with sexual abuse having been established in the first family some two years prior to the instant proceedings. The cases cited by the parties (*In re Brooks* (1978), 63 Ill. App. 3d 328, 379 N.E.2d 872; *In re Flynn* (1974), 22 Ill. App. 3d 994, 318 N.E.2d 105; *In re J.R.* (1985), 130 Ill. App. 3d 6, 473 N.E.2d 1009) all involved a parent's treatment of siblings within the same family unit.

■■ After a careful examination of the record, we have concluded that the trial court's findings were not against the manifest weight of the evidence. The respondents argue that affirmance necessarily will indicate that once one has been found to be a sexual abuser, he will always be so found. We do not agree. The testimony of the therapist Patterson gives some indication that this might be true, but she also stated how such an abnormality might be overcome. As we have repeatedly pointed out, parental rights have not been terminated in this case. Under the protective order David has 36 months in which to show that he has been rehabilitated. The State's concern for the welfare of the minors is justified. We hold that an injurious environment was established within the meaning of the statute by the manifest weight of the evidence. The humane orders of the trial court will materially assist in rectifying that situation.

■■ Respondents' final argument concerns section 4—6(3) of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 704—6(3)). That section provides:

> "In any hearing under this Act, proof of the abuse or neglect of one minor shall be admissible evidence on the issue of the abuse or neglect of any other minor for whom the respondent is responsible."

Respondents contend that this section should be limited to minors within the same family unit but cite no authority for that proposition. We do not agree. If that construction were placed upon it, there would be no protection for minors whose parents or guardians had remarried, or who for some other reason not immediately discernible, were living outside the family unit.

For all the foregoing reasons, the orders of the circuit court of McLean County are affirmed.

Affirmed.

McCULLOUGH, P.J., and GREEN, J., concur.