589 N.E.2d 970 (1992)
226 Ill. App.3d 805
168 Ill.Dec. 570
In re D.L.W. and J.W. III, Minors
(The People of the State of Illinois, Petitioner-Appellee,
v.
James O. Walters II, Respondent-Appellant).
No. 4-91-0200.
Appellate Court of Illinois, Fourth District.
March 19, 1992.
Lynne R. Feldman, Pavia & Marsh, Urbana, for respondent-appellant.
Thomas J. Difanis, State's Atty., Urbana, Kenneth R. Boyle, Director, State's Attys. Appellate Prosecutor, Springfield, Robert J. Biderman, Deputy Director, Linda Susan McClain, Staff Atty., for petitioner-appellee.
Justice McCULLOUGH delivered the opinion of the court:
On February 25, 1991, the parental rights of respondent James O. Walters to his two natural sons, J.W. (born April 6, 1981) and D.L.W. (born September 11, 1986), were terminated. Respondent appeals, contending (1) the trial court's finding of unfitness based on extreme and repeated cruelty (Ill.Rev.Stat.1989, ch. 40, par. 1501(D)(e)) was against the manifest *971 weight of the evidence and (2) he had not been provided with the statutorily mandated family reunification services (Ill.Rev. Stat.1989, ch. 23, par. 5001 et seq.). We reject both of respondent's contentions and affirm the trial court.
The saga of this family began in 1988 when J.W. went to school with a bruised nose. J.W.'s teacher asked him how he got the bruise and J.W. indicated his father had hit him in the face with his fist. J.W.'s stepbrother, S.H. (born June 24, 1979), also alleged respondent had caused his (S.H.'s) head to strike against the garage wall. The following day a shelter-care petition was filed, and after a hearing on that petition, temporary custody of all three minors was taken from respondent and his wife, Sandra. An adjudicatory hearing was later held (Champaign County case No. 88-J-92), and the court found all three minors (D.L.W., J.W., and S.H.) abused because of physical abuse by respondent. (Ill.Rev. Stat.1989, ch. 37, par. 802-3(2)(i).) The minors were made wards of the court and custody was removed from respondent and Sandra. The trial court ordered both parents to maintain a regular course of visitation with the minors, cooperate with the social worker and attend counseling and parenting skills classes.
Between June 1988 and June 1989, respondent and Sandra fully cooperated with the Department of Children and Family Services (DCFS). They kept all visits with the children, attended the counseling sessions and completed the parental educational training programs suggested by DCFS. Because of their successful completion of the objectives set forth in the client service plans established by DCFS, all three minors were returned to respondent and Sandra in June 1989.
During the next six months, respondent and Sandra voluntarily continued the counseling and there were no reported incidents of physical abuse with respect to any of the minors. However, in late January 1990, Sandra fled the State of Illinois with the minors and went to her sister's house in Ohio. Approximately three weeks later, respondent followed Sandra to Ohio and discovered where she was hiding. Sandra returned to Illinois with the respondent and the minors; however, there was contradictory testimony as to whether she and the minors voluntarily accompanied respondent or were forced back to Illinois against their will.
In March 1990, another shelter-care petition was filed on behalf of all three minors alleging neglect because of an environment injurious to their welfare and abuse because of physical injury by respondent. In April 1990, the trial court entered an order in Champaign County case No. 90-J-47, finding the minors neglected and abused. (Ill.Rev.Stat.1989, ch. 37, pars. 802-3(1)(b), (2)(i).) Temporary custody of J.W. and D.L.W. was ordered to remain with DCFS. However, the trial court granted temporary custody of S.H. to his natural father; as a result, any parental rights of respondent to S.H. are not a subject of this appeal.
A supplemental petition seeking a finding of unfitness and termination of respondent's parental rights was filed in May 1990. Count I of the petition alleged respondent was unfit because he engaged in acts of extreme and repeated cruelty to J.W.; count II alleged respondent was unfit because he was found to have physically abused J.W.; count III alleged respondent was unfit because he failed to protect J.W. and D.L.W. from conditions within their environment injurious to their welfare; and count IV alleged respondent was unfit because he engaged in acts of depravity against J.W. Ill.Rev.Stat.1989, ch. 40, pars. 1501(D)(e), (D)(f), (D)(g), (D)(i).
A dispositional hearing was held in late May 1990, wherein the trial court found the minors to be neglected and abused as a result of physical abuse by respondent. (Ill.Rev.Stat.1989, ch. 37, par. 802-3(2)(i).) Custody of J.W. and D.L.W. was placed with DCFS, and respondent was prohibited from having any contact with both minors.
In July 1990, respondent was sentenced to 364 days in jail in Champaign County case No. 90-CF-303, as a result of a guilty plea to a battery charge based on one of the incidents of physical abuse to J.W. Respondent attempted a reconciliation with *972 Sandra while he was in jail but the parties' marriage was eventually dissolved. Two review reports indicated respondent was cooperative with DCFS and complied with the terms of the client service plan created by DCFS, although due to his incarceration, many aspects of the plan had not yet been implemented.
An adjudicatory hearing regarding respondent's unfitness was held in January 1991. Testimony at that hearing was given by Dr. Ronald Matthew, a clinical psychologist, two social workers and two DCFS caseworkers. Dr. Matthew testified respondent was likely to overreact when his values were threatened and he needed to continue with counseling. Robert Stewart, a social worker, testified respondent still denied losing control when he disciplined J.W. and still believed it was important for his children to fear him. The two DCFS caseworkers testified respondent participated in counseling services offered to him prior to his incarceration, but he had not done so since his imprisonment as those services were no longer available to him. Respondent presented no testimonial evidence on his own behalf.
In addition to the testimonial evidence presented by the State, the trial court took judicial notice of the record of proceedings in the prior case involving the minors and their parents (Champaign County case No. 88-J-92). The trial court also took judicial notice of the record of proceedings of two criminal cases against respondent, both of which resulted in battery convictions (Champaign County case Nos. 88-CF-660 and 90-CF-303). J.W. was the victim in both of those incidents. Finally, the trial court took judicial notice of the record of proceedings in the instant case, including the transcript of the testimony at the adjudicatory hearing held on April 5, 1990.
The trial court found in favor of respondent on counts I, III, and IV of the supplemental petition. However, the trial court found against respondent on count II, finding that the evidence established respondent engaged in acts of extreme and repeated cruelty toward J.W. Specifically, the trial court relied on three instances of physical abuse by respondent of J.W. Those instances are as follows:
(1) The May 1988 incident in which J.W. appeared at school with a bruised face alleging respondent had struck him in the face with his fist; this was the incident which started the first case against respondent and Sandra (Champaign County case No. 88-J-92);
(2) An incident in December 1989, described by Sandra at the April 5, 1990, hearing, wherein she saw respondent grab J.W. by the throat and knee him in the groin because of soiled underwear;
(3) An incident in late January 1990, described by Sandra at the April 5, 1990, hearing, in which she witnessed respondent tell J.W. to bend over and touch his toes while respondent spanked him on the buttocks with a 1½-foot-long, 2-inch-wide board. Respondent allegedly told J.W., "`I don't care if I have to beat you to death, you are going to learn not to wet the bed any longer.'" This was the incident that had caused Sandra to flee to Ohio.
The trial court also considered three other incidents of physical abuse by respondent. The first incident occurred in May 1988 in which respondent caused S.H. to bang his head against the garage wall. The other two instances of physical abuse were described by J.W. to an investigator for the Urbana police department. J.W. told the investigator that respondent had beaten him once with a wooden spoon, causing it to break into several pieces. J.W. also told the investigator that respondent had hit him in the head, causing a period of blurred vision.
Based on these incidents and the testimony presented at the adjudicatory hearing, the trial court concluded that respondent had engaged in acts of extreme and repeated cruelty to J.W. Subsequently, the trial court ordered respondent's parental rights to J.W. and D.L.W. terminated. This appeal followed.
The Juvenile Court Act of 1987 (Ill.Rev.Stat.1989, ch. 37, par. 801-1 et seq.) and the Adoption Act (Ill.Rev.Stat.1989, ch. 40, par. 1501 et seq.) govern the termination *973 of parental rights. A finding of parental unfitness may be based on evidence sufficient to support any one statutory ground, even if the evidence is not sufficient to support other grounds alleged. (See, e.g., In re Edmonds (1980), 85 Ill. App.3d 229, 232-33, 40 Ill.Dec. 530, 533-34, 406 N.E.2d 231, 234-35.) Section 1(D)(e) of the Adoption Act defines an "unfit person" as "any person whom the court shall find to be unfit to have a child" because of "extreme or repeated cruelty to the child." (Ill.Rev.Stat.1989, ch. 40, par. 1501(D)(e).) A finding of unfitness may lead to the termination of parental rights and a court may take such action after finding it to be in the best interests of the minor. In re W.U. (1990), 199 Ill.App.3d 320, 322, 145 Ill.Dec. 269, 271, 556 N.E.2d 887, 889.
Respondent contends it was against the manifest weight of the evidence to find him unfit based on acts of extreme and repeated cruelty to J.W. Respondent asserts this is merely a case of excessive corporal punishment and not "extreme and repeated cruelty," as those words have been "defined in the statute and interpreted by case law."
Despite this contention regarding the definition and interpretation of the words "extreme and repeated cruelty," respondent asserts that there are no appellate court cases in which a parent has been found to be unfit under this section. Respondent attempts to analogize the meaning of that phrase to its use in and interpretation under the Illinois Marriage and Dissolution of Marriage Act. Ill.Rev.Stat. 1989, ch. 40, par. 401 et seq.
Contrary to respondent's allegation, our own research has located a number of cases in which a parent was determined to be unfit because of acts of extreme and repeated cruelty to his or her children. (See, e.g., In re E.P. (1988), 167 Ill.App.3d 534, 118 Ill.Dec. 321, 521 N.E.2d 603; In re J.R. (1985), 130 Ill.App.3d 6, 85 Ill.Dec. 410, 473 N.E.2d 1009.) Accordingly, there is no need to examine the use of this phrase in the context of the Illinois Marriage and Dissolution of Marriage Act.
In In re E.P., 167 Ill.App.3d 534, 118 Ill.Dec. 321, 521 N.E.2d 603, for example, this court upheld the trial court's conclusion that there was clear and convincing evidence of parental unfitness as not contrary to the manifest weight of the evidence. There, one of the specific grounds of unfitness was extreme and repeated cruelty to the minors. The evidence established the children's father sexually abused them on several occasions. This court affirmed the trial court's conclusion that this constituted extreme and repeated cruelty.
In In re J.R., 130 Ill.App.3d 6, 85 Ill.Dec. 410, 473 N.E.2d 1009, the termination of the respondent's parental rights was held not against the manifest weight of the evidence. There, the father committed a battery against one of the minors. With knowledge of that battery, the respondent mother had allowed the father to continue living in the family residence. Approximately one year later, the father murdered another child. Nevertheless, the mother helped the father conceal the murder and allowed him to remain living in the residence. One of the alleged grounds of unfitness was extreme and repeated cruelty to the children. The court found the evidence sufficient to uphold that allegation. See also In re Wheeler (1980), 86 Ill.App.3d 564, 42 Ill.Dec. 46, 408 N.E.2d 424 (in which the parents were found unfit because of extreme and repeated cruelty to the children by virtue of repeated acts of physical abuse); In re Dixon (1980), 81 Ill.App.3d 493, 36 Ill.Dec. 750, 401 N.E.2d 591 (wherein the father's repeated acts of physical abuse against the son were found to constitute extreme and repeated cruelty sufficient to sustain the termination of his parental rights).
The evidence here is more than sufficient to establish that respondent engaged in acts of extreme and repeated cruelty to J.W. Respondent has two battery convictions for acts against J.W. The trial court also referred to three separate instances where respondent had physically abused J.W., i.e., by striking him with a closed fist, kneeing him in the groin, and also striking him with a 1½-foot-long board. Moreover, accompanying this physical abuse, respondent *974 yelled profanities at J.W. and threatened to beat him to death unless he learned not to wet the bed.
The trial court noted that most of the testimony regarding these instances of physical abuse came from Sandra, who admitted to drug use throughout the time period involved in this case. Nevertheless, the trial court chose to believe her statements regarding the occurrence of abuse, as they were corroborated by certain acknowledgements of respondent, statements J.W. made to the police, and statements made by S.H. to the police. The trial court's opportunity to view and evaluate the parties and their testimony is far superior to that of a reviewing court. Accordingly, the trial court's findings should be given great deference. In re A.T. (1990), 197 Ill.App.3d 821, 829-30, 144 Ill.Dec. 283, 289, 555 N.E.2d 402, 408.
Respondent further contends it was against the manifest weight of the evidence to terminate his parental rights to D.L.W. because the record shows no acts of extreme and repeated cruelty to D.L.W. We disagree.
Evidence supporting a parent's unfitness toward one or more children may serve as a basis for termination of parental rights toward all of that party's children, even where that evidence relates to events occurring prior to the birth of some of the children. In re Henry (1988), 175 Ill. App.3d 778, 792, 125 Ill.Dec. 413, 422-23, 530 N.E.2d 571, 580-81; see also In re J.R., 130 Ill.App.3d at 9, 85 Ill.Dec. at 413, 473 N.E.2d at 1012; In re Flynn (1974), 22 Ill.App.3d 994, 998, 318 N.E.2d 105, 108.
The record indicates Sandra did not testify as to any direct acts of physical abuse by respondent against D.L.W. However, S.H. told a caseworker that respondent spanked D.L.W. about six times a week. There was also testimony from the caseworkers and Sandra that respondent verbally abused D.L.W. Finally, the evidence established respondent believed in corporal punishment and believed his children needed to fear him for him to be able to control their behavior. Respondent was unable to differentiate between corporal punishment and physical abuse after the children had been returned in 1989. It is apparent that whatever respondent learned from the parenting and counseling classes did nothing to rectify this problem. Because of respondent's inability to control his temper and tendency to physically abuse the minors when attempting to discipline them, D.L.W. was at a very high risk of physical abuse.
Accordingly, the termination of respondent's parental rights to J.W. and D.L.W. was not against the manifest weight of the evidence. The evidence established several acts of extreme and repeated cruelty toward J.W. Furthermore, the record indicates D.L.W., although not previously a victim of respondent's unacceptable behavior, was at a high risk to suffer acts of extreme and repeated cruelty at the hands of respondent. The trial court had an adequate basis for terminating respondent's parental rights to both minors.
Respondent also contends DCFS has failed to provide him with family reunification services mandated by statute. (Ill. Rev.Stat.1989, ch. 23, par. 5005.) Respondent's contention is without merit. His parental rights were terminated for physical abuse of the children.
We need not decide here, if, when, or whether the provisions of section 5 of the Children and Family Services Act may be relevant in some termination proceedings. Whether DCFS satisfied its responsibility required by that section does not excuse respondent's conduct here and is not relevant where the alleged conduct is extreme and repeated cruelty.
For the reasons stated above, we affirm the circuit court of Champaign County.
Affirmed.
GREEN, P.J., and KNECHT, J., concur.