*In re* S.H. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Alan B. Heiman, Respondent-Appellant).

Fourth District No. 4—96—0412

Opinion filed November 7, 1996.

Tim J. Willis, Public Defender, of Sullivan, for appellant.

Gale C. Coil, State's Attorney, of Sullivan (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In July 1992, the State filed a petition to terminate the parental rights of respondent (the termination petition), Alan B. Heiman, regarding his three children: S.H., a female born in October 1984; J.H., a male born in June 1983; and D.H., a male born in May 1986. The State alleged that respondent was unfit due to depravity, pursuant to section 1(D)(i) of the Adoption Act (Ill. Rev. Stat. 1991, ch. 40, par. 1501(D)(i) (now 750 ILCS 50/1(D)(i) (West 1994))). The State based this claim upon respondent's July 1992 conviction of two counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(b)(1)), in which he was charged with sexual penetration of his daughter, S.H., by placing his penis in her vagina and her mouth. In February 1994, this court affirmed his conviction (*People v. Heiman*, 254 Ill. App. 3d 1121 (1994) (unpublished order under Supreme Court Rule 23).

In February 1996, the trial court conducted a hearing on the termination petition and found respondent to be unfit. The court later determined that it would be in the children's best interests to terminate respondent's parental rights.

Respondent appeals, arguing that (1) the State failed to prove he was unfit based upon depravity; and (2) the trial court's finding that terminating his parental rights was in the children's best interests was against the manifest weight of the evidence. We affirm.

I. BACKGROUND

In July 1992, the State filed the termination petition, and in September 1992, the State also filed a petition for adjudication of

wardship (hereafter the abuse petition), pursuant to section 2—3 of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1991, ch. 37, par. 802—3(2)(iii) (now 705 ILCS 405/2—3(2)(iii) (West 1994))). The abuse petition alleged in part, that S.H., D.H., and J.H. were abused minors because

"[respondent] committed on several, separate occasions, the offense of [a]ggravated [c]riminal [s]exual [a]buse on the minor child [S.H.], in that he, being a person over the age of 17 years, knowingly committed acts of sexual penetration with [S.H.], who was under the age of 13 years, in that he placed his penis in the vagina of [S.H.], and placed his penis in the mouth of [S.H.]."

In January 1993, the trial court conducted a joint hearing on both petitions, at which respondent agreed to admit the allegations in the abuse petition. In accordance with this agreement, respondent would not be allowed to see the children during the time he was serving his eight-year prison sentence in the Department of Corrections (DOC). Further, he would attend prison counseling sessions, and the reports of those sessions would be submitted to the court and counsel.

The trial court accepted respondent's admission to the abuse petition and addressed respondent's projected "out date" from DOC. The court then continued the hearing on the still-pending termination petition until December 1995—*a delay of 35 months*—for "status review." The court took this action over the objections of the children's guardian *ad litem*, as well as counsel for the respondent mother (who had long since been separated from respondent). The record does not reveal why the court believed a delay of this magnitude was appropriate. Given the young age of the children involved, a prompt hearing on the termination petition would have been in the children's best interests. Trial courts should be reluctant to grant continuances in such cases, and when a continuance is necessary, it normally should be for the shortest time possible. Lengthy continuances should be granted only under the most extraordinary circumstances.

In December 1995, the trial court reallotted the hearing on the termination petition until January 1996, and later continued that hearing to February 1996. When the court finally conducted the hearing in February 1996, the State presented its case, *the entirety of which* consisted of the State's request that the court take judicial notice of respondent's July 1992 conviction in Moultrie County case No. 92—CF—5 of two counts of aggravated criminal sexual assault committed upon S.H. When the court granted the State's request, the State rested. (We note in passing that the State's supposed need to continue the hearing on the termination petition for 35 months seems

all the more remarkable when the case the State actually presented to the court could not have been more simple.)

After the State rested, respondent moved for dismissal, citing *In re Abdullah*, 85 Ill. 2d 300, 423 N.E.2d 915 (1981), and arguing that "the law is crystal clear [that a] conviction standing alone is insufficient for termination of parental rights." The trial court took the matter under advisement and later denied respondent's motion to dismiss. The court found that the State had presented a *prima facie* case of respondent's depravity as alleged in the termination petition. In so ruling, the court stated that it had reviewed the report of proceedings in Moultrie County case No. 92—CF—5 of which it had taken judicial notice. The court also noted that the State made a *prima facie* case of depravity not only as to S.H., but also as to her two siblings, who were not named victims in Moultrie County case No. 92—CF—5. The court specifically found that "the proof of depravity in actions directed toward one minor child stands as sufficient proof of depravity with respect to all minor children of [respondent]."

In March 1996, the trial court reconvened the hearing on the termination petition and heard additional evidence. Respondent's father testified that respondent expressed remorse for what he had done, that he misses his children and loves them, and that he is attending a sex offender counseling program in Shelbyville. Respondent's father conceded that prior to respondent's committing these offenses, he had also indicated to his father that he loved his children. Respondent's father also revealed on cross-examination that he did not believe respondent ever committed the offenses in the first place. According to respondent's father, respondent said he pleaded guilty to the charges only because he did not want to see S.H. "drug through all that."

Respondent did not testify at the hearing. After listening to arguments of counsel, the trial court concluded that the evidence demonstrated that respondent "is totally devoid of any moral sense or rectitude with respect to these children, and the court finds the State has sustained its burden of proof of clear and convincing evidence of the depravity of the respondent." The court then set the matter for a dispositional hearing to determine whether terminating respondent's parental rights would be in the children's best interests.

At that May 1996 hearing, a mental health worker who counseled the children testified that S.H., who was then 11, was still afraid of her father. The mental health worker saw no benefit to S.H.'s resuming a relationship with respondent.

A social worker with the Illinois Department of Children and Family Services (DCFS) also testified that she had been working with

S.H. for two years and that S.H. still feared her father. J.H. similarly told the DCFS worker that he was afraid of respondent. Last, the DCFS worker opined that it would be in the best interests of the children to terminate respondent's parental rights. Again, respondent did not testify. At the conclusion of this hearing, the trial court held that it was in the best interests of the children that respondent's parental rights be terminated, and the court so ordered.

## II. ANALYSIS

### A. Proof of Depravity

On appeal, respondent repeats the argument he made at the trial level: *Abdullah* stands for the proposition that "a single criminal conviction, without more, will not support a finding of unfitness based on depravity." *Abdullah*, 85 Ill. 2d at 306, 423 N.E.2d at 918. We note that some appellate court decisions support this argument. In *In re R.G.*, 165 Ill. App. 3d 112, 134, 518 N.E.2d 691, 705 (1988), the Second District Appellate Court wrote that "the certified copy of respondent's conviction for aggravated criminal sexual assault against [the minor child in question], by itself, would not support a finding of unfitness based on depravity." In addition, the First District Appellate Court recently wrote that

> "[d]epravity of a parent may be shown by a series of acts or a course of conduct that indicates a moral deficiency and an inability to conform to accepted morality. [Citation.] *** [A] single felony conviction is not sufficient in and of itself to establish the depravity of a parent[.]" *In re Dawn H.*, 281 Ill. App. 3d 746, 757, 667 N.E.2d 485, 493 (1996).

In so holding, the first district cited this court's decision in *In re Sanders*, 77 Ill. App. 3d 78, 395 N.E.2d 1228 (1979), as support for its holding. In *Sanders*, this court held that to prove depravity, the State "was required to establish—by clear and convincing evidence—repetitive acts of sufficient duration to establish a deficiency in a moral sense and either an inability or an unwillingness to conform to accepted moral standards." *Sanders*, 77 Ill. App. 3d at 81, 395 N.E.2d at 1231; see also *In re Marriage of T.H.*, 255 Ill. App. 3d 247, 255, 626 N.E.2d 403, 409 (1993) ("[d]epravity may be established by a *series of acts* *** indicating a deficiency in a moral sense" but "the mere fact of a felony criminal conviction is not sufficient to justify a finding of depravity" (emphasis added)).

Both parties (and all courts) agree that the supreme court's *Abdullah* decision should be the primary basis for analyzing the sufficiency of the State's evidence of depravity based upon a respondent's conviction. Because we conclude that the analyses of respondent—

and the appellate courts (including this one)—that respondent cites in support of his argument are inconsistent with the supreme court's holding in *Abdullah*, we decline to follow those decisions, and we reject respondent's argument.

In *Abdullah*, the trial court found the respondent father to be unfit based upon depravity because he murdered his ex-wife, the mother of the three-year-old child regarding whom the respondent's parental rights were terminated. *Abdullah*, 85 Ill. 2d at 303, 423 N.E.2d at 916. The State's sole witness at the hearing on the State's petition to terminate respondent's parental rights was the assistant State's Attorney who had prosecuted respondent. As the *Adbullah* court noted, that

> "witness identified defendant as the accused in the murder trial, stated what the jury verdict was, and said that the post-trial motion had been denied. He testified that the defendant had been sentenced to a prison term of 60 years, though the basis for the extended term was not explained." *Abdullah*, 85 Ill. 2d at 303, 423 N.E.2d at 916.

The respondent in *Abdullah* testified that his conviction was pending on appeal, that his only prior conviction had been many years earlier, and that he did not kill his ex-wife. After hearing this testimony, the trial court took judicial notice of the court file and docket sheet in the respondent's murder prosecution and found the State had proved the respondent an unfit parent because of depravity. *Abdullah*, 85 Ill. 2d at 303-04, 423 N.E.2d at 916.

On appeal, the Fourth District Appellate Court reversed, holding that "while the factual evidence that formed the basis of the murder conviction might show depravity, the mere fact of conviction did not." *Abdullah*, 85 Ill. 2d at 304, 423 N.E.2d at 916-17.

The supreme court reversed the appellate court, citing three separate factors in the evidence which showed the respondent's depravity: (1) he was convicted of murder; (2) the murder victim was the mother of respondent's child; and (3) the trial court's imposition of an extended term of imprisonment indicated that the murder was accompanied by exceptionally brutal and heinous behavior demonstrating wanton cruelty. The supreme court concluded that "[t]aken together, these three factors establish that defendant suffered from an inherent deficiency of moral sense and rectitude. They show depravity." *Abdullah*, 85 Ill. 2d at 306-07, 423 N.E.2d at 918.

The *Abdullah* court also wrote the following (which we note has created much confusion, as later appellate court decisions show):

> "Several decisions in the appellate court, none involving murder, have held that a single criminal conviction, without more,

will not support a finding of unfitness based on depravity. [Citations.] *The State conceded this point,* but argues that here there was other evidence which, taken in conjunction with the evidence of murder, sufficiently proved depravity." (Emphasis added.) *Abdullah,* 85 Ill. 2d at 306, 423 N.E.2d at 918.

We disagree that this quote supports respondent's claim—or the appellate court decisions that respondent cites—that "a single criminal conviction, without more, will not support a finding of unfitness based on depravity." After all, the supreme court went to some pains to explain that the *State conceded this point* and argued the presence of other evidence. Thus, in the context of the case before it and the issues the supreme court *needed* to decide, the sufficiency of a single criminal conviction, without more, was not properly before the court. As a result, the above quotation regarding prior appellate court decisions does not denote supreme court approval of those decisions; at best, it constitutes *dicta.* We find support for this conclusion in the specially concurring opinion of Justice Clark, which reads in part as follows:

"This case stands for the proposition that a showing that a person has been convicted of the murder of his wife, the mother of his child, and sentenced to an extended term of 60 years in prison clearly and convincingly establishes depravity sufficient to dispense with the person's consent to his child's placement for adoption. In the first opinion issued by this court, the majority held that facts underlying the conviction were needed before depravity would be established. Mr. Justices Underwood and Ryan joined me in dissenting from that decision, and the court subsequently granted a rehearing to reconsider the decision. Upon further reflection[,] we have decided that the underlying facts are not needed in a case of this sort before depravity is clearly and convincingly established.

*** We have announced the rule that depravity is sufficiently shown here by the murder conviction, the identity of the victim, and the extended sentence. No need is presented and no purpose is served by recounting the facts underlying the conviction." *Abdullah,* 85 Ill. 2d at 311-12, 423 N.E.2d at 920 (Clark, J., specially concurring).

In our judgment, the key holding from *Abdullah* is the following: "[Section 1(D)(i) of t]he Adoption Act does not define 'depravity,' but this court has held that depravity is ' "an inherent deficiency of moral sense and rectitude." ' " *Abdullah,* 85 Ill. 2d at 305, 423 N.E.2d at 917, quoting *Stalder v. Stone,* 412 Ill. 488, 498, 107 N.E.2d 696, 701 (1952). This narrow definition means that the commission of most felonies, even very serious ones, will not, without more, support a

finding of unfitness based on depravity. Thus, the appellate court decisions we earlier referred to correctly state that *in most cases*, a single criminal conviction, without more, will not support a finding of unfitness based on depravity. They are not correct, however, insofar as they conclude that a single criminal conviction, without more, can *never* support a finding of unfitness based on depravity. Indeed, this very case provides the best illustration of why respondent's argument here—and the prior decisions he cites—cannot possibly be correct.

The court records of Moultrie County case No. 92—CF—5, the case of which the trial court took judicial notice, contained the evidence before the court on the issue of whether respondent was unfit. In that case, respondent was convicted of two separate Class X felonies of aggravated criminal sexual assault because (1) he placed his penis in the vagina of S.H., his five-year-old daughter, and (2) he placed his penis in her mouth. The State argues that this record contained other information that allegedly aggravates the circumstances of respondent's despicable criminal conduct, but we explicitly decline to consider this argument because our doing so might somehow suggest that the criminal conduct already before the court as a result of respondent's guilty pleas was insufficient to prove his depravity—a proposition we *emphatically* reject.

■ Stripped of its legal niceties, respondent's argument on appeal is essentially the following: "Sure, I sexually assaulted my five-year-old daughter in the most vile ways, but hey, everyone has a bad day. Surely, judge, you can't find me to be an unfit parent until you learn more about the true me and how I've behaved on other days." We view this argument as unpersuasive. By committing the acts to which he pleaded guilty, respondent has told us all about his true self that we ever want—or need—to know. We hold that respondent's vicious and perverted conduct toward his young daughter constitutes *by itself* overwhelming evidence that respondent is unfit within the meaning of the Adoption Act because he possesses " 'an inherent deficiency of moral sense and rectitude.' " *Abdullah*, 85 Ill. 2d at 305, 423 N.E.2d at 917, quoting *Stalder*, 412 Ill. at 498, 107 N.E.2d at 701.

To demonstrate that this assessment of respondent's posture before this court is not overstated, we quote the following from the argument respondent's counsel made in February 1996, in support of his motion that the trial court should dismiss the State's petition after the State rested:

"In order to terminate his parental rights[,] [the State has] to show by clear and convincing evidence he is a depraved person. *** No showing here of anything other than a single conviction.

In fact, [respondent] has no prior convictions of any [kind]. No pattern of misconduct here. Simply one incident. And one incident[,] without more, [does not] constitute[ ] anything approaching an inherent deficiency of moral sense and rectitude."

We recognize that the murder committed in *Abdullah* might have been one of those regrettable crimes of passion between adults whose preexisting relationship had gone sour. In contrast, this case presents no crime of passion, but the worst kind of perverted behavior a parent can exhibit toward his child, breaching the oldest—and most important—position of trust in human society. On this point, we agree with the following argument the State made at the termination hearing:

"[M]urder is a very serious crime, [and] I am not saying it's not as serious as a sexual assault would be. But it is possible to commit the act of murder without total depravity. \*\*\* [W]hile [murder] would be reprehensible, \*\*\* it's conceivable a murder could be committed without [classic depravity being present]. \*\*\* [But] [t]here is no way a person who puts a penis in a five-year-old girl's \*\*\* mouth is not depraved."

The trial court agreed with these sentiments, explaining its determination that respondent is unfit as follows:

"I agree with [the State] that I can think of methods by which murder would not constitute depravity. \*\*\* There are no circumstances that I can formulate, and at least there are no circumstances in this case \*\*\*, to indicate [anything] but that the conduct admitted to [by respondent] constitutes a clear finding that this respondent father is totally devoid of any moral sense of rectitude with respect to these children."

In sum, we hold that a parent who commits acts like these upon his or her own child is subject to being found unfit due to depravity based *solely* upon that conduct, and that parent thereby forever forfeits any claim to any further contact with that child or his or her siblings.

We add the latter point because the trial court terminated respondent's parental rights not only regarding S.H., the victim of his perverted sexual conduct, but also regarding her brothers, D.H. and J.H. Although respondent did not raise this issue on appeal, we nonetheless reaffirm this court's earlier decision that evidence supporting a parent's unfitness regarding one child may serve as a basis for terminating parental rights regarding each of that party's children, even where that evidence relates to events occurring prior to the birth of some of the children. See *In re D.L.W.*, 226 Ill. App. 3d 805, 811, 589 N.E.2d 970, 974 (1992). When faced with evidence of prior abuse by parents, the juvenile court should not have to refrain

from acting until each child suffers an injury. We agree with the views of the First District Appellate Court that " '[a parent] does not have the privilege of inflicting brutal treatment upon each of his children in succession before they may individually obtain the protection of the state.' " *In re Brooks*, 63 Ill. App. 3d 328, 339, 379 N.E.2d 872, 881 (1978), quoting *In re Miller*, 40 Wash. 2d 319, 323, 242 P.2d 1016, 1018 (1952).

## B. Best Interests of the Children

■ On appeal, respondent also challenges the trial court's conclusion that terminating his parental rights was in the children's best interests. Once a court finds a parent unfit within the meaning of section 1 of the Adoption Act, then parental rights can be terminated only if the court additionally finds that it is in the best interests of the minors for that to occur. A trial court's finding that termination is in the children's best interests will not be reversed unless it is contrary to the manifest weight of the evidence. *In re C.R.*, 221 Ill. App. 3d 373, 382, 581 N.E.2d 1202, 1207 (1991). Given our earlier discussion regarding respondent's perverted and deviant behavior, we have no difficulty concluding that the trial court's decision was not contrary to the manifest weight of the evidence.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GREEN and KNECHT, JJ., concur.